**UNITED STATES**

v.

**Technical Sergeant Gregory W. HAYMAKER, FR232–02–3119 United States Air Force.**

**No. ACM 32338.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 27 Feb. 1996.

Decided 2 June 1997.

Appellate Counsel for Appellant: Colonel David W. Madsen, Lieutenant Colonel Kim L. Sheffield, and Captain Margo Stone Newton.

Appellate Counsel for the United States: Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin, and Captain Deborah M. Carr.

Before PEARSON, MORGAN, C.H., II, and MORGAN, J.H. Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, C.H., II, Judge:

On the evening of May 4, 1995, appellant's wife found him slumped forward on the couch in the living room, apparently dead. Acting swiftly, she used her experience and training as a nurses' aide to administer emergency cardio-pulmonary resuscitation to her husband, who actually had no pulse, while appellant's daughter dialed 911. Emergency medical technicians arrived to find appellant still clinically dead, but through Herculean efforts were able to resuscitate him. Following analysis of medically-directed urine specimens, it was discovered that appellant was positive for cocaine, codeine, and quinine (the latter commonly used to cut cocaine). He was diagnosed with "sudden cardiac death due to cocaine toxicity." When he returned from the hospital a week later, agents of the Air Force Office of Special Investigations (AFOSI) were armed with an authorization to search his on-base quarters and to seize hair samples from his body.

In the house the AFOSI found a mirror, the plastic rim of which bore signs of numerous razor cuts, and upon which cocaine residue was found. They also found a homemade crack pipe also bearing cocaine residue. Testing of appellant's chest and underarm hair likewise proved positive for cocaine.

A military judge sitting alone as a general court-martial convicted appellant pursuant to his pleas of divers uses of cocaine over a one year span of time and possession of cocaine. He sentenced appellant to a bad-conduct discharge, reduction to the grade of E–1, and confinement for six months. A pretrial

agreement caused the convening authority to approve a reduction only to E–2, but otherwise left the sentence undisturbed. Appellant brings five assignments of error: (I) that he suffered cruel and unusual punishment in violation of the Eighth Amendment of the Constitution as a result of medical neglect during his post-trial confinement; (II) that the staff judge advocate (SJA) erred in not appointing a new defense counsel to handle post-trial matters because of an allegation of ineffective assistance of counsel; (III) that there was a major variance between the proof and the specification of divers uses of cocaine; (IV) that the sentence should be reassessed in view of two errors in the Staff Judge Advocate's Recommendation (SJAR); and (V) that there was insufficient probable cause to search his quarters and seize his body hair for cocaine testing. We shall cover these averments of error *seriatim*.

### Conditions of Post–Trial Confinement

At our sufferance, and over strenuous governmental objection, appellant extensively supplemented the record of trial with his own affidavit and medical records to make out the claim that he was denied essential medical treatment while serving his sentence at the Quantico Correction Facility. Piecing through the medical records we are able to divine that in August of 1993 doctors had preliminarily diagnosed him as having hepatitis B and hepatitis C. Extensive follow-up in March of 1994, including an interview with appellant, yielded no clue as to the origin of the disease, appellant having denied intravenous drug use or any other transfer of potentially contaminated blood products. A liver biopsy was conducted to determine what, if any, damage had been done. Dr. (Major) Michael Van Norstand concluded appellant suffered from *"very mild* chronic active hepatitis [with] widely scattered small areas of piecemeal necrosis and no fibrosis cirrhosis." (Emphasis in original.) A regime consisting of self-administered injections of Interferon was prescribed in September of 1994. Appellant volitionally discontinued the Interferon treatments in March of 1995, apparently because of the unpleasant side effects.

In December of 1995, while awaiting trial, appellant went to see Dr. Susan E. McCormick, who apparently replaced Dr. Van Norstand. While he expressed interest in resuming the Interferon treatment, according to Dr. McCormick's record entry, appellant "absolutely does not want another liver biopsy at this time." Appellant remained adamant in this refusal, even after Dr. McCormick explained to him that any decision to resume the Interferon course would depend on the results of a new liver biopsy. She wrote, "patient understands but does not want [the biopsy]. May consider it in a few months."

Following his conviction, appellant began serving his post-trial confinement at Quantico on February 27, 1996. The gist of his complaint before us is that the medical technician assigned to the brig, Petty Officer (PO) Barnes, while aware of his condition, did not act promptly enough to get him an appointment with internal medicine. Appellant does not aver, nor does any medical entry before us indicate, that he ever suffered any distress, pain, injury, or even overt manifestations of hepatitis such as to trigger a requirement for immediate medical intervention. According to appellant's unsworn declaration, Barnes told him in early March, after appellant had been in post-trial confinement for about a week, that, although he had tried, he could not get him an appointment to see a specialist until April. Unrelated to the hepatitis claim, appellant also complains that in April of 1996, PO Barnes was angry with him for trying to get a specific medication to treat a sore on his lips without going through the appropriate medical channels.

This situation prompted appellant to write to his senators and congressman, and to make his hepatitis the centerpiece of a request for clemency from the convening authority. At no time, however, did appellant request a deferral of confinement on this or any other ground. A Navy medical doctor, after reviewing his medical records, determined that his condition did not warrant medical excusal from confinement. This is hardly surprising. Well before he went into confinement, but after having been diagnosed with hepatitis and receiving treatment, appel-

lant asked for and received medical permission to go overseas for temporary duty assignments, notwithstanding his diagnosis.

In his unsworn declaration, appellant makes some statements flatly contradicted by his own medical records. For example, he denies ever having refused the liver biopsy, or even that he was ever advised of the necessity for a biopsy before Interferon treatment would be resumed. He declares that he advised Barnes that if he were going to continue treatment, "I needed to do so as soon as possible because it would be too difficult to start treatment in April due to the side effects that come with the start of treatment." We take from this statement the purpose to imply a sense of medical urgency not justified by his own record, and at odds with the fact that he had, on his own, discontinued the Interferon treatment over a year earlier.

■ Although briefed by neither party, a threshold question is whether we are the appropriate forum in which to bring this complaint, or even whether we have jurisdiction over it. Article 66(c) of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(c), instructs that we may "act only with respect to the findings and sentence as approved by the convening authority." Appellant does not contend that a six month sentence, by itself, is unconstitutional, but rather that the *conditions of confinement* are (or in this case, were). This is something which, of course, is not in the record of trial and constitutes no part of the findings or the sentence *qua* sentence.

Nothing in our review of the UCMJ enlarges upon Article 66(c) when it comes to the scope of our appellate jurisdiction. Article 13, UCMJ, 10 U.S.C. § 813, prohibits punishment *before* trial. Article 55, UCMJ, 10 U.S.C. § 855, prohibits cruel and unusual punishments "adjudged by a court-martial or inflicted upon any person subject to this chapter." It is by no means clear what authority we possess where a punishment otherwise lawfully adjudged by a court-martial becomes, in its execution, cruel and unusual because of the individual transgressions or derelictions of a prison official. As an Article I Court, and thus a creature of Congress, we cannot be certain that we were intended to oversee the conduct of prison affairs at any institution wherein a post-conviction military prisoner is housed, and nothing in our search of our statutory charter or precedent suggests that we were.

A related consideration impelling the conclusion that we are not the appropriate forum for this complaint is the singular inaptitude of our available remedies to address prisoner complaints of this sort. Of course, prisoner lawsuits over the conditions of confinement are nothing new to Article III jurisprudence. But they most commonly arise in the context of a civil lawsuit seeking equitable relief, or on occasion, monetary damages in addition to equitable relief. See, e.g., *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (damages and injunction sought under authority of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (request for injunction ordering prison officials to devise Constitutionally sound program to assure inmates access to courts). Seldom, if ever, do such claims arise in connection with a direct appeal of a conviction or sentence. More important, they are brought before Article III courts, statutorily empowered to grant the sort of declarative, equitable, systemic relief appropriate to remedy meritorious prisoner complaints. Even at that, the Supreme Court has lately, and with increasing frequency, lamented that Article III courts have gone too far in intruding into the day-to-day running of correctional institutions. See, e.g., *Lewis v. Casey*, —— U.S. ——, ——, 116 S.Ct. 2174, 2185, 135 L.Ed.2d 606 (1996) (opinions "have lamented ... in the name of the Constitution, becom[ing] ... enmeshed in the minutiae of prison operations" (citing *Bell v. Wolfish*, 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979)); *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987) (prison administrators, not the courts, to make difficult judgments concerning institutional operations)).

The question of matching the remedy to the specific injury alleged is by no means

incidental to our discussion as to the appropriateness of our consideration of appellant's complaint. It follows that, to achieve a remedy tailored to the specific inadequacy alleged, the complaint should be brought to the forum or tribunal best positioned to do so. *Missouri v. Jenkins,* 515 U.S. 70, 115 S.Ct. 2038, 132 L.Ed.2d 63 (1995). Appellant ignores this crucial point, asking vaguely that we "reassess his sentence as this Honorable Court deems appropriate." We doubt that we have the authority to fashion from a reduction in sentence what amounts to a request for compensation as a result of an allegation of civil injury occurring during post-trial confinement, even where the claim is shoehorned under the broad rubric of constitutional law. Problematic as this is, it is more so considering appellant has already served his confinement. Aphoristically speaking, appellant is asking us to pound a square remedy into a round injury.

Even if it were so that we had jurisdiction to look into the conditions of post-trial confinement, a conclusion by no means established here, fundamental principles of constitutional jurisprudence, comity, and exhaustion of remedies augur for abstention in this case. To be sure, the Supreme Court has stated that "deliberate indifference to serious medical needs" may be so serious as to constitute "unnecessary and wanton infliction of pain," and thus violate the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). But it has yet to find a situation satisfying both the subjective (deliberate indifference) and objective (serious present or future health problems) prongs of an Eighth Amendment violation.

In *Estelle,* cited by appellant, the failure of the state prison to diagnose and treat a severe back injury was not held to be sufficiently serious to run afoul of the Eighth Amendment. Likewise, in a case which was not, strictly speaking, a medical treatment case, the failure of prison officials to safeguard a pre-operative transsexual from the depredations of his fellow inmates did not, in the Court's judgment, necessarily amount to deliberate indifference to the prisoner's health or safety, notwithstanding the petitioner's contention that he had been raped. In that case, the Court remanded because of its expressed uncertainty that the District Court had used the correct standard of review. *Farmer,* 511 U.S. at 833–34, 114 S.Ct. at 1976–77.

*Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), dealt with a District Court's summary dismissal of a prisoner's lawsuit under the Eighth Amendment for being forced to share a cell with a heavy (five-pack-a-day) smoker. There the Supreme Court, while expressing some doubt as to the ultimate resolution of the issues, agreed that McKinney should have been permitted to prove that his secondary exposure to tobacco smoke was sufficient to constitute an unreasonable danger to his *future* health. It expressed no opinion as to whether McKinney could satisfy the subjective element of his burden, namely, whether any such injury could be attributed to the deliberate indifference of prison officials.

Both the *Estelle* and the *Farmer* courts were agreed that medical malpractice in the prison environment, even if established, was not enough of itself to hurdle the requirements to make out an Eighth Amendment claim. Much more was needed—*deliberate indifference* and *serious health risks.*

By the foregoing discussion we do not mean to imply, much less conclude, that what happened to appellant was medical malpractice, nor even that the Quantico facility failed in its duty of care. We do so only to contrast the enormity of the injury which must be shown before Article III federal courts will step in under the aegis of the Constitution to entertain complaints such as appellant's. It is instructive in this respect to review the Supreme Court's language in *Lewis* wherein it elaborated on its holding in *Estelle.*

It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution.... But the distinction between the two roles would be obliterated if, to invoke intervention of the

courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If—to take another example from prison life—a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, [citing *Estelle* ], simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons. *Lewis*, —— U.S. at ——, 116 S.Ct. at 2179.

The dilemma of deciding the limits of our ability, if any, to look into the conditions of post-trial confinement in a military correctional institution, or to fashion an appropriate remedy in the event constitutional abuses are shown, is resolved in this case by the utter meritlessness of appellant's claim. Under existing Supreme Court precedent we hold that appellant has failed to establish that he suffered any actual harm, nor even that at the time of his incarceration such harm was imminent.

It is granted that appellant saw PO Barnes, and that he received medical treatment and attention while at the Quantico Correction Facility for other complaints, including a sprained ankle and a recurrent sore in his mouth. He ultimately did see a physician for his hepatitis condition in April, who in turn referred him back to an Air Force physician (Dr. McCormick) whom he saw following his release in July. He neither alleges, nor do his medical records reveal, that he ever complained of any symptoms, pain, aggravation or injury related to his hepatitis. He does not even now make such a complaint.

Before appellant was incarcerated, Dr. McCormick made it plain to him that resumption of the Interferon treatment was contingent upon another liver biopsy, an option he evidently refused. The course of treatment for his hepatitis was in his hands, and we shall not relieve him of that responsibility merely because he could not get an appointment with a specialist for a month.

The Eighth Amendment is not in place to confer sentencing windfalls on a prisoner whose complaint amounts to no more than that medical authorities respected his decision on treatment. Certainly it is fair to say that appellant is far from carrying the deliberate indifference element of his burden.

■ Post-trial military prisoners, even those such as appellant whose complaints do not achieve constitutional dimension, are by no means left remediless. In addition to the internal mechanisms to address prisoners' concerns, Article 138 of the UCMJ, 10 U.S.C. § 938, is available. Medical contingencies may justify, as well, favorable consideration of a request for deferment of confinement. *See* Article 57(d), UCMJ, 10 U.S.C. § 857. There is no evidence appellant even attempted to explore any of these channels. Instead, he asked to be *excused* from serving any confinement at all in view of his medical condition.

We hold, therefore, that appellant has failed to make out a *prima facie* case of an Eighth Amendment violation, and we consequently need not consider whether, had he succeeded in doing so, this Court would be jurisdictionally limited as to what it could do about it.

### Remaining Assignments of Error

■ Appellant's remaining assignments of error are without merit. Appellant's offhand reference in his clemency submission that his attorney was aware of his medical condition, but that "he failed to bring it up at my trial for reasons unknown," does not fairly make out a case of ineffective assistance of counsel such as to require the convening authority to send the post-trial matters to another lawyer. In the first place, we are hardly surprised that his attorney did not make much of appellant's condition to the military judge given its popular association with intravenous drug abuse and other unsavory practices. Underscoring our conclusion in this respect is appellant's careful circumscription of his admitted drug use to only two times in one day. We note also that appellant's "attorney" for all intents and purposes

during the trial, was his civilian lawyer, while his military counsel handled his post-trial matters. We see, therefore, no conflict sufficient to trigger service of the SJAR on another lawyer. *United States v. Carter*, 40 M.J. 102 (C.M.A.1994).

■ There is no conflict between the proof adduced at trial and the specification alleging use of cocaine on divers occasions between May 5, 1994 and May 4, 1995. During the inquiry into the providence of appellant's pleas at trial, the appellant admitted only to the use which he could not plausibly deny— that of May 4, 1995. When it was brought to the military judge's attention that the specification alleged *divers* uses over a one year period, following a hasty conference with his lawyers appellant admitted that he had actually had cocaine twice on May 4, 1995, at two different places on two different occasions. When the military judge offered his opinion that it might nonetheless be appropriate to amend the specification, the prosecutor vigorously protested. He noted the numerous apparent razor marks on a mirror, the crack pipe hidden in appellant's quarters, and the presence of cocaine in appellant's body hairs, all of which suggested that May 4, 1995, was not appellant's first experience with cocaine. Appellant himself did not say as much, although he used the verb "experimented" to describe his usage on May 4, and carefully limited his responses to the military judge's questions to just that which was sufficient to confirm use on more than one occasion.

Interestingly, at argument on sentencing appellant's civilian lawyer disavowed any intention of trying to limit the usage to only a single date.

> My client has tried to be as candid as possible about what happened and he has come before the court, he has admitted his involvement and he is not in any way, shape or form trying to suggest to you that this was a one-time incident.... We are not here to insult the court's intelligence and he is not here to insult the court's intelligence. This was something that he had recently got involved in and, again, not to insult the court's intelligence, *it wasn't just on May 4th.* And I think the evidence clearly that the government could

have presented would have shown otherwise, and we were not here to suggest that to the court.

[Emphasis supplied.] When the military judge briefly entertained the idea of amending the specification by limiting it to May 4th, appellant's trial defense counsel specifically declined the judge's invitation to argue in favor of such an amendment. In conjunction with appellant's tactical approach taken during argument and his guilty plea, this constituted an express waiver of any variance. R.C.M. 910(j); *cf. United States v. Harwood*, 46 M.J. 26 (1997).

Likewise, appellant waived his objections to the SJAR by his failure to object in his response thereto in the absence of plain error, which we do not find here. R.C.M. 1106(f)(6).

Appellant's final assertion of error, raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), that the search of his quarters and the seizure of his body hair lacked probable cause, was likewise waived by his pleas. MIL.R.EVID. 311(i).

### Conclusion

Appellant's failure to make out a *prima facie* case of post-trial confinement conditions which violated the constitutional prohibition against cruel and unusual punishment entitles him to no remedy from this Court on sentencing. His remaining assignments of error being without merit, we hold the findings and sentence to be correct in law and fact, and the same are hereby

AFFIRMED.

Senior Judge PEARSON and Judge J.H. MORGAN concur.