UNITED STATES

v.

Master Sergeant Edward S. TOWNS, United States Air Force.

ACM 33525.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 24 Nov. 1998.

Decided 29 March 2000.

Appellate Counsel for Appellant: Colonel Theodore J. Fink, Colonel Jeanne M. Rueth, and Major Stephen P. Kelly.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, Major Eric D. Placke, and Captain Martin J. Hindel.

Before YOUNG, Senior Judge, SPISAK, and WILCOX, Appellate Military Judges.

## OPINION OF THE COURT

WILCOX, Judge:

This case raises the question of the jurisdiction of this Court to address the treatment of prisoners in post-trial confinement as part of a sentence appropriateness evaluation conducted pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c).

In accordance with the appellant's pleas, a military judge found the appellant guilty of one specification of an attempted indecent act and four specifications of indecent acts in violation of Articles 80 and 134, UCMJ, 10 U.S.C. §§ 880, 934. The military judge sentenced the appellant to a bad-conduct discharge, reduction to airman basic, and confinement for 30 months. The appellant now contends that the guards at the Dyess Air Force Base (AFB) confinement facility violated his right under the Eighth Amendment to the Constitution and Article 55, UCMJ, 10 U.S.C. § 855, to be free from cruel and unusual punishments. He also contends that the Staff Judge Advocate's Recommendation (SJAR) to the convening authority was defective in that it failed to adequately address the appellant's Eighth Amendment and Article 55, UCMJ, concerns which he raised as part of his post-trial submissions. Lastly, he contends that his approved sentence is inappropriately severe. Finding no error, we affirm.

## I. FACTS

The appellant was convicted of molesting his daughter on a number of occasions from March 1997 until June 1998. After the trial, Master Sergeant (MSgt) Towns was taken to the confinement facility at Dyess AFB. In *matters submitted to the convening authority as part of the post-trial processing of his case*, the appellant alleged that, for the next nine hours, the confinement facility guards harassed, brutalized, tortured, assaulted, degraded, and humiliated him. Specifically he alleged that, among other things, the confinement guards yelled at him; pushed him to the ground; smeared his face with shaving cream; packed shaving cream in his ears and nostrils; made obscene comments about his wife and daughter; forced him to the floor with a riot shield; sprayed him with water

from a hose until he was soaking wet; forced him to strip and spank himself; stomped on his stocking feet; tore his Master Sergeant stripes from his sleeves ripping his uniform; forced him to march goose step shouting, "All hail Mother Russia"; forced him to act like Igor the humpback, a chicken, a rabbit, and Elmer Fudd; repeatedly sprayed water from a Windex bottle in his face, nose, and ears; directed racial slurs and threats toward him, his wife, and daughter; thumped his forehead with their knuckles and fingers; forced him to participate in a mock wedding with a guard and surrender his wedding ring to the guard who then referred to him as his "bride" and his "personal bitch"; ordered him to shove cardboard and plastic trash into his underwear; placed a laundry bag over his head and accused him of being a member of the Ku Klux Klan; made him parade in front of the other prisoners soaking wet with shaving cream on his face and his uniform shirt tied to his head; and brought another prisoner into a room with the appellant naked on his hands and knees, had that prisoner refer to the appellant as the "new bitch," told him he would be "shared" with the other prisoners, and told him to "say you think I'm cute."

Much of this harassment was conducted in front of officers and non-commissioned officers who were not part of the confinement staff but attended apparently for the entertainment it afforded them. The next day, the appellant told his defense counsel of the abuses and then later reported them to Air Force Office of Special Investigations agents who investigated the allegations. The appellant was moved to a different confinement facility. In its brief, the government did not "concede Appellant's facts as true and accurate," but neither did they contest them.

Prior to action in the case, the appellant brought these matters to the attention of the convening authority in post-trial matters submitted in accordance with Rule for Courts–Martial (R.C.M.) 1105. In the addendum to his initial recommendation to the convening authority, the Staff Judge Advocate (SJA) made no specific mention of the appellant's assertions of abuse but noted the appellant's request for a reduction of confinement and concluded:

The matters submitted by the defense are attached to this Addendum and are hereby incorporated by reference. In light of those matters raised by the defense, I recommend the period of confinement be reduced to 27 months. You must consider all written matters submitted before you determine the appropriate action to be taken in this case.

All the matters raised by the appellant, including the details of his first day of post-trial confinement, were attached to the addendum. The convening authority followed his SJA's advice and reduced the confinement to 27 months.

## II. JURISDICTION

Before directly addressing the appellant's allegations, we must first determine whether we have jurisdiction to consider this catalog of horrors in a meaningful way. We conclude that we have the requisite jurisdiction.

 When Congress exercised its power to govern and regulate the Armed Forces by ordering the establishment of this Court, it narrowly circumscribed our jurisdiction to "act only with respect to the findings and sentence as approved by the convening authority." Article 66(c), 10 U.S.C. § 866(c). We have no general supervisory authority with respect to military justice or authority over actions administering sentences of military prisoners. Cf. Clinton v. Goldsmith, 526 U.S. 529, 536–38, 119 S.Ct. 1538, 1543, 143 L.Ed.2d 720 (1999) (holding the Court of Appeals for the Armed Forces has no supervisory authority). We recognize that, whenever possible, in cases where the issue is the treatment of sentenced prisoners, we are best served by leaving the supervision of those facilities to prison administrators who have the hands-on experience needed to operate such a facility. United States v. Worden, 17 M.J. 887, 891 (A.F.C.M.R.1984). However, while we have no authority outside of the carefully drawn boundaries of Article 66(c), UCMJ, we do have a responsibility to act whenever our jurisdiction requires it.

 In reviewing cases referred to us, our authority to act is limited to that portion of the findings and sentence approved by the convening authority that we find correct in law and fact and that we determine, on the basis of the entire record, should be approved. Article 66(c), UCMJ. In determining the appropriateness of a sentence approved by a convening authority, this Court is charged with considering the same facts relating to the sentence which were considered by the convening authority in his action. United States v. Lanford, 20 C.M.R. 87, 97, 1955 WL 3541 (C.M.A.1955). However in conducting our review, the exercise of our judicial powers is limited to ensuring justice is done. They do not extend to the exercise of clemency. United States v. Healy, 26 M.J. 394, 395–96 (C.M.A.1988). The two concepts can overlap, and matters submitted to the convening authority for clemency purposes are available to this Court to aid us in determining the appropriateness of a sentence. Id. at 396. However, while the concept of sentence appropriateness and clemency are related, they are different. "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. Clemency involves bestowing mercy—treating an accused with less rigor than he deserves." Id. at 395.

 When an appellant claims cruel and unusual punishment, he is claiming he has been treated unfairly. Such a claim is a claim of unjust treatment, not a request for mercy. We hold therefore, that Article 66(c), UCMJ, bestows jurisdiction on this Court to consider claims of cruel and unusual post-trial treatment in cases properly referred to us. This jurisdiction is limited to consideration of these claims as part of our determination of sentence appropriateness. See United States v. Ingham, 42 M.J. 218, 229–30 (1995), cert. denied, 516 U.S. 1063, 116 S.Ct. 745, 133 L.Ed.2d 693 (1996). It is also limited to claims based on post-trial treatment that occurs prior to the action of the convening authority and which is documented in the record of trial. Article 66(c), UCMJ.

## III. EXHAUSTION AND RIPENESS

 The government contends that the issue of post-trial treatment of the appellant is not ripe in that appellant has failed to ex-

haust administrative remedies. It suggests that the appellant should be required to file a complaint pursuant to Article 138, UCMJ, 10 U.S.C. § 938, prior to bringing this matter to the attention of this Court. It is true that our superior court has required an appellant alleging post-trial maltreatment to demonstrate that he has sought appropriate administrative remedies before his claim for relief will be considered ripe. *United States v. Miller*, 46 M.J. 248, 250–51 (1997); *United States v. Coffey*, 38 M.J. 290, 291 (C.M.A. 1993). This requirement serves the dual purposes of insuring that the grievance is resolved at the lowest possible level and that an adequate record is developed. *Id.* at 250. The government's reliance on these cases is misplaced. In these cases our superior court applied the requirement of exhaustion by means of an Article 138 complaint to those situations where the post-trial confinement complained of was not part of the record considered by the convening authority when he approved the sentences. *See also United States v. Haymaker*, 46 M.J. 757 (A.F.Ct. Crim.App.1997). In cases like the instant case, post-trial submissions pursuant to R.C.M. 1105 are one of the administrative remedies specifically provided an appellant. By submitting his post-trial matters to the convening authority, he, in fact, exhausts this administrative avenue made available to him by the UCMJ. Requiring him to file a second identical complaint under the rubric of Article 138 would be a redundant and senseless waste of time. Further, in this case, the appellant's post-trial submissions and their apparent adoption by the SJAR (see Part V of this opinion, *infra*) establish a complete record upon which we can decide this case. It is the same record upon which the convening authority relied to make his sentencing decision. We consider that same record when making a sentence appropriateness determination.

The government contends that, rather than decide this matter, we should return the case for a post-trial factfinding hearing. *United States v. DuBay*, 37 C.M.R. 411, 1967 WL 4276 (C.M.A.1967). This is unnecessary in so far as we are able to resolve this case based on the matters submitted to the convening authority in the complete SJAR and without reference to the matters submitted to this Court after the convening authority's action.

## IV. CRUEL AND UNUSUAL PUNISHMENT

Having determined that we have jurisdiction over the claims of the appellant and that the issue is ripe for our consideration, we next turn to the determination of whether the acts complained of amount to cruel and unusual punishment. In doing so, we are aware that a serviceman is entitled to protection from cruel and unusual punishment under both statute as well as the Eighth Amendment and thus, in the absence of military case law, seek guidance from Supreme Court precedent. *United States v. Matthews*, 16 M.J. 354, 368 (C.M.A.1983).

Article 55, UCMJ, provides that "cruel and unusual punishment[ ] may not be ... *inflicted* upon any person subject to this chapter." (Emphasis added). Likewise, the Supreme Court has held that " 'the unnecessary and wanton infliction of pain' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)). In determining whether unnecessary and wanton pain has been inflicted, we must determine "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)); *Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (holding that the post-trial beatings of a prisoner by prison guards a violation of. the Eighth Amendment's Cruel and Unusual Punishment Clause). In determining whether the force used was necessary or unjustified, we consider several factors including the extent of the injuries suffered by an inmate, the need for the force, the relationship between the need and the amount of force applied, the threat reasonably perceived by responsible officials, and efforts to temper the severity of the force. *Hudson,*

503 U.S. at 11–12, 112 S.Ct. 995. Additionally, Eighth Amendment claims must be analyzed subjectively (did officials act with a sufficiently culpable state of mind?) and objectively (was the alleged wrongdoing objectively harmful enough to establish a constitutional violation?). *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Of course not every malevolent touching, nor every push or shove amounts to a valid constitutional claim. *De minimis* uses of force do not amount to constitutional violations provided that the force is not of a sort "repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9–10, 112 S.Ct. 995 (citations omitted).

▮ The evidence in this case makes it clear that the security guards were acting maliciously and sadistically for the purpose of causing both physical and psychological harm. We agree with Justice Blackmun in his concurring opinion in *Hudson* that psychological harm can also prove to be cruel and unusual punishment. *Hudson,* 503 U.S. at 16–17, 112 S.Ct. 995. There was no perceived threat from the appellant and so far as the record shows, no need for any force. All the same, the guards, without justification, sexually harassed, humiliated, and assaulted the appellant for hours. The culpable state of mind of the guards is uncontested. Even if we considered the treatment suffered by the appellant as a *de minimis* use of force, which we do not based on its severity, focus, and duration, we hold that the conduct, taken as a whole, is sufficiently repugnant to the conscience so as to make it a violation of the Eighth Amendment's Cruel and Unusual Punishment Clause as well as Article 55, UCMJ, 10 U.S.C. § 855.

## V. THE SJAR AND THE ACTION OF THE CONVENING AUTHORITY

▮ The appellant contends that the SJAR was inadequate in that it failed to address the issue of cruel and unusual punishment raised in the post-trial matters submitted to the convening authority by the appellant. The appellant's assertions are unfounded.

R.C.M. 1106(d)(4) requires the convening authority's SJA to state in his recommendation to the convening authority whether "corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate." The rule requires no analysis or rationale by the SJA.

In this case the SJAR did address the concerns of the appellant and did recommend corrective action when it incorporated by reference the matters submitted by the appellant and then stated, *"In light of those matters raised by the defense,* I recommend the period of confinement be reduced to 27 months." (Emphasis added). In essence, this comment by the SJA adopted the allegations set out by the appellant as accurate and recommended corrective action based on those errors. With the appellant's submissions and the SJAR in front of him, the convening authority could not have been misled. Nor could he have reasonably concluded other than that the assertions of the appellant had merit. Even assuming arguendo that the SJAR was deficient, the appellant suffered no harm because the convening authority apparently awarded the appellant 90 days of confinement credit for the 1 day he suffered maltreatment. We hold that his corrective actions were sufficient to atone for the abominable treatment the appellant suffered at the hands of the prison guards.

## VI. SENTENCE SEVERITY

As a separate matter the appellant contends that his sentence was inappropriately severe. We do not agree.

Article 66(c) requires that we determine sentence appropriateness to ensure justice is done by giving appellant's case individualized consideration as to the nature and seriousness of the offenses and the character of the appellant's service. *Healy,* 26 M.J. at 395–96; *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982). Applying this standard, and having previously determined that the convening authority's action on the sentence was an appropriate and sufficient response to the cruel and unusual punishment suffered by

the appellant, we do not find the appellant's sentence to be inappropriately severe.

## VII. CONCLUSION

Accordingly, we conclude that the approved findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record are

AFFIRMED.

Senior Judges YOUNG and SPISAK concur.