**UNITED STATES**

v.

**Senior Airman Timothy J. PENA,
United States Air Force.**

**ACM 35397.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 3 Sept. 2002.

15 Sept. 2005.

Appellate Counsel for Appellant: Major Andrew S. Williams (argued), Colonel Beverly B. Knott, Colonel Carlos L. McDade, Major Terry L. McElyea, and Major Sandra K. Whittington.

Appellate Counsel for the United States: Captain Stacey J. Vetter (argued), Colonel LeEllen Coacher, Lieutenant Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, Major John C. Johnson, and Major Jin–Hwa Frazier.

Before STONE, MOODY, and SMITH, Appellate Military Judges.

1. The appellant assigns four errors in this appeal:

I. Whether the appellant was improperly placed on excess appellate leave and denied pay and allowances in violation of Article 76a, UCMJ, 10 U.S.C. § 876a, when his sentence to confinement was not completed or remitted and he was forced to fulfill conditions of man-

## OPINION OF THE COURT

SMITH, Judge:

Consistent with his pleas, the appellant was found guilty of several sex-related offenses that occurred over a three-year period. Apart from a single charge of attempted indecent assault, in violation of Article 80, UCMJ, 10 U.S.C. § 880, the appellant's misconduct was detailed in 15 separate specifications that alleged violations of Article 134, UCMJ, 10 U.S.C. § 934. A military judge sitting as a general court-martial sentenced him to a dishonorable discharge, confinement for 1 year, and reduction to E–1. The convening authority approved the sentence as adjudged.

In an issue of first impression for this Court, the appellant challenges his release from confinement under the Mandatory Supervised Release (MSR) program. He challenges both the legality of MSR and its application in his case. Finding no error, we affirm the findings and sentence.

### Background

The appellant's minimum release date from confinement was 22 June 2003. His maximum release was 2 September 2003. On 21 February 2003, the Air Force Clemency and Parole Board (AFC & PB) notified the appellant he had been denied clemency and parole, but advised him that the AFC & PB was directing MSR upon his minimum release date. The term of mandatory supervision was to run from 22 June 2003 to 2 September 2003. The appellant was released from confinement on 22 June 2003.

The appellant filed a writ of mandamus with this Court on 14 July 2003, asking for his release from the MSR program and an adjustment to the effective date of his placement on appellate leave. The Writ raised four issues, in substance the same issues raised now on appeal under Article 66, UCMJ, 10 U.S.C. § 866.[1] Citing *Clinton v.*

datory supervision upon his release from confinement.

II. Whether the AFC & PB increased the severity of the appellant's sentence in violation of Article 55, UCMJ, 10 U.S.C. § 855, and the Eighth Amendment of the Constitution when it forced the appellant to fulfill conditions of mandatory supervision that are not authorized

*Goldsmith,* 526 U.S. 529, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999), on 14 August 2003 we held that this Court did not have jurisdiction to grant the requested relief. *United States v. Pena,* ACM 35397, Misc. Dkt. No. 2003–04 (14 Aug 2003) (unpub. op.). On 9 September 2003, the Court of Appeals for the Armed Forces denied the appellant's writ-appeal petition. *United States v. Pena,* 59 M.J. 135 (C.A.A.F.2003).

### Jurisdiction to Consider MSR

■ The threshold issue is whether we have jurisdiction on questions concerning MSR, or whether the program is an administrative consequence beyond the scope of our Article 66(c), 10 U.S.C. § 866(c), review authority. We possess "no ... authority over actions administering sentences of military prisoners." *United States v. Towns,* 52 M.J. 830, 833 (A.F.Ct.Crim.App.2000), *aff'd,* 55 M.J. 361 (C.A.A.F.2001). Further, "[a]s an Article I Court, and thus a creature of Congress, we cannot be certain that we were intended to oversee the conduct of prison affairs at any institution wherein a post-conviction military prisoner is housed, and nothing in our search of our statutory charter or precedent suggests that we were." *United States v. Haymaker,* 46 M.J. 757, 760 (A.F.Ct.Crim.App.1997), *aff'd,* 50 M.J. 127 (C.A.A.F.1998).

Mindful of our precedent and limited authority, we do not reject the appellant's challenge simply because his complaint implicates the administration of his sentence. Under Article 66(c), UCMJ, we have the duty and authority to review sentence appropriateness and determine whether the sentence is correct "in law." *United States v. Erby,* 54 M.J. 476, 478 (C.A.A.F.2001). Therefore, we have the authority to assess

by the Uniform Code of Military Justice (UCMJ).
III. Whether the imposition of conditions of mandatory supervision on the appellant violates the Due Process Clause of the Constitution because the military judge did not announce a period of MSR or any of the programs conditions as part of the sentence. IV. Whether the appellant's pleas of guilty are improvident because the military judge did not inform the appellant prior to accepting his pleas that he could be additionally punished in unspecified ways.

the nature and general application of MSR to satisfy ourselves "that the severity of the adjudged and approved sentence has not been unlawfully increased by prison officials, and to ensure that the sentence is executed in a manner consistent with Article 55[, UCMJ, 10 U.S.C. § 855,] and the Constitution." *United States v. White,* 54 M.J. 469, 472 (C.A.A.F.2001). *See also Erby,* 54 M.J. at 478.

### MSR Program

1. The Federal System

MSR is a relatively recent form of conditional release for Department of Defense (DOD) prisoners, but supervised release has existed far longer in the federal civilian system. "In the Sentencing Reform Act of 1984, § 212(a)(2), 98 Stat. 1999, Congress eliminated most forms of parole in favor of supervised release, a form of postconfinement monitoring overseen by the sentencing court, rather than the Parole Commission." *Johnson v. United States,* 529 U.S. 694, 696–97, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000).

Supervised release in the federal civilian system is part of the sentence adjudged. 18 U.S.C. § 3583.[2] MSR functions as:

a form of government supervision after a term of imprisonment. Unlike parole, which has the effect of reducing the stated term of imprisonment, supervised release is a term of supervision in addition to, and following, a term of imprisonment imposed by a court. Supervised release is similar to probation, with the exception that supervised release follows a term of imprisonment whereas probation cannot be ordered if a term of imprisonment is imposed for the same or a different offense.

**2.** *See also* 18 U.S.C. § 3551 (authorized sentences); 18 U.S.C. § 3553(c) (imposition of a sentence; the court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence); 18 U.S.C.App. § 5D1.1 (imposition of a term of supervised release requires the court to order a term of supervised release to follow imprisonment when a sentence to imprisonment of more than one year is imposed or if required by specific statute).

Honorable Harold Baer Jr., *The Alpha & Omega of Supervised Release*, 60 Alb. L.Rev. 267, 269 (1996) (citations omitted).

2. The DOD

The DOD MSR program bears little resemblance to the federal system's scheme of supervised release, primarily because supervised release in the military is not imposed as part of an accused's sentence.

DOD's version of supervised release must be considered with parole, given the interrelationship between the two forms of release. Parole is defined as a form of "[c]onditional release from confinement under the guidance and supervision of a U.S. [United States] probation officer." DOD Directive (DODD) 1325.4, *Confinement of Military Prisoners and Administration of Military Correctional Programs and Facilities*, E2.1.6 (17 Aug 2001). "Parole may be granted until the expiration of a prisoner's full sentence regardless of good conduct time or other sentence reductions." DOD Instruction (DODI) 1325.7, *Administration of Military Correctional Facilities and Clemency and Parole Authority*, ¶ 6.17.9.4 (17 Jul 2001). Parole is voluntary, in that an inmate must apply and be approved for participation. Before being released on parole, the inmate must have an approved parole supervision plan (projecting expected living arrangements and employment situation) and agree in writing to abide by the plan and the conditions of supervision. Air Force Instruction (AFI) 31–205, *The Air Force Corrections System*, ¶ 10.15 (9 Apr 2001).

MSR was not explicitly defined in DOD publications when the appellant was placed on supervised release, although the narrative guidance in DODI 1325.7 characterized MSR as a supervised release for prisoners not granted parole prior to their minimum release date. DODI 1325.7, ¶¶ 1.4, 6.20.1. MSR is now defined as "[a] form of conditional release granted to individuals who have served their sentence to confinement up to their MRD [minimum release date]. This form of release is served until the [adjusted maximum release date], unless otherwise re-

voked or remitted by the Clemency and Parole Board concerned." DOD 1325.7–M, *DOD Sentence Computation Manual*, AP1.1.12 (27 Jul 2004).

Unlike the federal civilian system, MSR in DOD is not part of the adjudged or approved sentence, and the period of supervision does not extend past a prisoner's maximum release date. The purpose of MSR is described in DODI 1325.7, ¶ 6.20.1:

> The supervised release of prisoners who are not granted parole prior to their MRD is a highly effective technique to provide an orderly transition to civilian life for released prisoners and to better protect the communities into which such prisoners are released. Accordingly, it shall be the policy of the Department of Defense to use supervised release in all cases except where it is determined by the Service Clemency and Parole Boards to be inappropriate.

Like the DOD publications it implemented, AFI 31–205 did not define MSR when the appellant was placed on supervised release.[3] The current version of the instruction describes the eligibility of prisoners for MSR who are not approved for parole:

> Mandatory supervision only applies to inmates, whose approved finding of guilty included at least one offense that occurred on or after August 16, 2001. The AFC & PB will normally place the following inmates, who are not paroled, under supervised release on their minimum release dates: an inmate convicted of a violent offense or a sex offense (see sex offense list at Enclosure 27, DODI 1325.7), if they have an approved sentence to confinement of 12 months or greater; an inmate with an approved sentence to confinement of 3 years or greater; and other inmates deemed appropriate for mandatory supervision by the confinement/corrections facility commander and the AFC & PB. The Board's decision is final. *Inmates placed on mandatory supervised release shall be*

3. In this opinion, subsequent references to MSR from AFI 31–205 are from the current version of

the instruction dated 7 Apr 2004, unless otherwise indicated.

*deemed as if on parole until the expiration of their sentence to confinement.*

AFI 31–205, ¶ 10.22 (emphasis added).

Unlike parole, MSR is involuntary in the sense the inmate does not apply for it. *See* DODI 1325.7, ¶ 1.4. The primary distinction between MSR and parole is program eligibility, which is based on timing: an inmate is eligible for MSR on his or her minimum release date and for parole on his or her "parole eligibility date." *See* AFI 31–205, ¶ 10.12.[4]

In execution, MSR is virtually identical to parole. An inmate selected for MSR must provide the AFC & PB with a release plan and agree in writing to abide by the plan and the conditions of supervision. AFI 31–205, ¶ 10.15. "The prisoner's written release plan shall include, at a minimum, the same provisions required of a parole plan." DODI 1325.7, ¶ 6.20.2. MSR violations are "considered equivalent to a violation of the terms and conditions of parole and processed" according to parole revocation procedures. DODI 1325.7, ¶ 6.20.6. And, as highlighted above, "[I]nmates placed on mandatory supervised release shall be deemed as if on parole until the expiration of their sentence to confinement." AFI 31–205, ¶ 10.22.

3. The Appellant's Supervised Release

In a 21 February 2003 memorandum notifying the appellant of his MSR, the AFC & PB informed him that failure to provide a release plan would make him "subject to a disciplinary and adjustment board and possible loss of good conduct time, thus delaying your release." In a declaration from the Review Board Manager at the Naval Consolidated Brig Miramar submitted to this Court by the appellant, he recalled that, "I told Airman Pena that he was required to accept the conditions of the [MSR] certificate and that, if he failed to do so, he may be subject to another court-martial for failing to obey a lawful order and/or dereliction of duty. I also told him that he would be subject to a disciplinary board where he could forfeit good-time credit earned and lose confinement privileges." On 17 May 2003, the appellant

submitted a memo to the Miramar brig commander contesting the AFC & PB's decision to place him in the MSR program. In a 10 July 2003 declaration to this Court (originally submitted with his extraordinary writ petition), the appellant contended that he never received a response to his memorandum. Based on matters submitted in response to our 14 January 2005 order to provide information and associated documents, it appears the appellant decided in early June 2003 to sign the MSR paperwork.

The government construes the appellant's decision to sign the MSR paperwork to mean he voluntarily participated in the MSR. But, in his 10 July 2003 declaration, the appellant contended otherwise: "I involuntarily agreed to those [MSR] terms and conditions because I was ordered to do so and, if I refused to do so, I was told I could be subject to a court-martial and other disciplinary action, including the loss of good-time credit and confinement privileges."

The appellant was required to sign an MSR agreement virtually identical to the standard parole agreement used by the DOD. DODI 1325.7, Enclosure 20. The basic MSR agreement in this case contained 16 specific conditions, with 9 additional conditions with which the appellant "solemnly promise[d] to abide." The condition of most direct concern to the appellant was participation and progress in a community-based sex offender treatment program, at his own expense, that "should have a duration of at least 24 months" (according to the agreement's conditions).

In his declaration, the appellant described the hardships occasioned by the MSR program. He had to proceed directly to his home of residence in Illinois and was not allowed to stop in Colorado and arrange for his household goods shipment. His required participation in Alcoholics Anonymous took 4 1/2 hours per week between attendance and travel time. His approved sex offender treatment program was in Chicago, which met at mid-day on Mondays and took 4 hours per week between attendance and travel time, and cost him a $10 roundtrip train ticket to Chicago each time. And, about

---

4. Eligibility is the same under current and former instructions.

every two weeks he had to report to his probation officer (the MSR is administered through federal probation officers) within 30 minutes of being notified to provide a urine specimen, regardless of his work commitments. He contends the combined conditions prevented him from finding employment. There is no indication of any problem with the appellant's actual participation in the program.

With 72 days of confinement left to serve, the appellant appeared to have only negative options if he did not agree to the MSR terms—lose his credits and privileges and possibly face a second court-martial. It seems counterintuitive that an inmate would want to remain in jail, but this is a case where there was some logic to it—the appellant would have been released largely obligation-free on his maximum release date.

The appellant signed the MSR agreement on 22 June 2003 and was released. The departure of an inmate from the confinement facility is deemed to constitute acceptance of the terms and condition of supervised release. DODI 1325.7, ¶ 6.20.4.

### MSR Legal Basis

There is no explicit statutory basis for a DOD version of supervised release. However, the Service Secretaries have been given broad authority to establish correctional facilities, manage inmate populations, and develop a system for the release of prisoners. Service Secretaries are required to provide for the "education, training, rehabilitation, and welfare of offenders" confined in military correctional facilities. 10 U.S.C. § 951. Congress has specifically provided for a system of parole in the DOD. 10 U.S.C. § 952. And, each Secretary must establish a system for the remission or suspension of the unexecuted part of the sentences of selected offenders. 10 U.S.C. § 953. It is apparent from the legislation enacted in 10 U.S.C. §§ 951–953 that Congress meant the Service

Secretaries to have broad discretion in the administration of corrections facilities and treatment of personnel confined.[5]

DOD implements these Title 10 provisions through DODD 1325.4 and DODI 1325.7. The directive charges the Service Secretaries to comply with Title 10, Chapter 48, *Military Correctional Facilities*, and allows the Secretaries to "[c]onsider release of eligible prisoners from confinement under parole supervision consistent with the ends of justice and public safety." DODD 1325.4, ¶ 4.6.

Service Secretaries are directed to accomplish a number of specific tasks, among them:

Issue regulations on the confinement of military prisoners and administration of military corrections programs and facilities that are consistent with this Directive. Provide programs for work, education, training, rehabilitation, the welfare of military prisoners, return to duty, and clemency and parole that are consistent with Chapter 47, Sections 801–946, and Chapter 48, of 10 U.S.C., and the MCM [Manual for Courts–Martial.] Retain clemency and parole authority over a member of a Service in that Military Department, including when the member is located in a correctional facility operated by another Military Department.

DODD 1325.4, ¶ 5.3 (subparagraph citations omitted).

The Service Secretaries discharge their corrections responsibilities through clemency and parole boards. The boards assist the individual Secretaries in executing clemency and parole authority and by serving as the primary departmental authority for administration of clemency and parole policies and programs. DODI 1325.7, ¶ 6.16.3. The Secretary of the Air Force created the AFC & PB to assist him as required. AFI 31–205, ¶ 10.8.

---

5. 10 U.S.C. §§ 951–953 originated in House of Representatives (H.R.) 5783, a 1968 bill introduced in the House Committee on Armed Services. The Provost Marshal of the Army testified that the "principal purpose of H.R. 5738 is to attain uniformity among the Armed Forces in the administration of military correctional facilities and the treatment of persons sentenced to confinement under the Uniform Code of Military Justice." *Subcommittee No. 1 Consideration of H.R. 5783, to Amend Titles 10, 14, and 37, United States Code, to Provide for Confinement and Treatment of Offenders Against the Uniform Code of Military Justice,* 90th Cong. 8373 (1968) (statement of Major General Carl C. Turner, Provost Marshal, United States Army).

The Air Force implements supervised release through AFI 31–205. In explaining the "Conditions for Release on Parole/MSR," the instruction provides that:

The AFC & PB paroles inmates when it is consistent with the ends of justice and as soon as inmates demonstrate they can assume the responsibilities of productive, law-abiding citizens. Parole is not a means to manage inmate populations. Prior to release on parole, inmates must have an approved supervision plan and agree in writing to abide by the plan and the conditions of supervision.

AFI 31–205, ¶ 10.15. The "Parole/MSR" paragraph caption is illustrative of the instruction's guidance on MSR generally; supervised release is clearly treated as a form of parole.

3. Discussion

■ Although not assigned as a specific error, the appellant urges us to find DOD's MSR program to be illegal. He contends, by analogy to 10 U.S.C. § 952, that MSR must be statutorily authorized and, because Congress has not done so, DOD has exceeded its rulemaking authority by creating an MSR program. We do not agree. We conclude that DOD may establish a MSR program option without explicit authority from Congress. We read 10 U.S.C. §§ 951–953 to grant the Service Secretaries the authority and discretion to fashion programs for the release of inmates. We do not construe Congress' specific authorization of parole in 10 U.S.C. § 952 to prohibit other forms of conditional release not specifically mentioned in the statute. The legislative history indicates 10 U.S.C. § 952 was intended to authorize

each Service to have a parole program. Moreover, Congress declined to define what could constitute "parole" by authorizing Service Secretaries to devise a "system of parole." 10 U.S.C. § 952.

After considering the entire regulatory scheme, we reach the inescapable conclusion that DOD's MSR is, for all practical purposes, parole. It may be an involuntary form of our traditional notion of parole, in that the inmate does not ask or apply for it, but it is parole nevertheless.[6] In general, "parole" is the "release of a prisoner from imprisonment before the full sentence has been served." *Black's Law Dictionary* 1139 (7th ed.1999). Apart from the differences in calculating release eligibility dates, MSR and parole are virtually indistinguishable. Therefore, we conclude that MSR as devised and implemented in the DOD is part of the "system of parole" authorized by 10 U.S.C. § 952.

*Is MSR Punishment?*

In his second assigned error, the appellant contends that the MSR terms and conditions amount to punishment. Specifically, he claims that the AFC & PB increased the severity of his sentence in violation of Article 55, UCMJ, and the Eighth Amendment, because he was forced to fulfill conditions of mandatory supervision not authorized by the UCMJ.

■ We review claims of cruel and unusual punishment under the Eighth Amendment and Article 55, UCMJ, de novo. *United States v. Smith*, 56 M.J. 290, 292 (C.A.A.F. 2002) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F.2001)). The Supreme Court's Eighth Amendment jurisprudence applies to issues raised under Article 55,

---

**6.** The federal civilian courts have reached similar conclusions. "[S]upervised release is essentially similar to parole. The nature of supervised release, which is normally imposed to follow a term of imprisonment, see 18 U.S.C. § 3583(a), is virtually the same as the nature of probation, which may be imposed in lieu of imprisonment, see 18 U.S.C. §§ 3561–3566 (1988)." *United States v. Meeks*, 25 F.3d 1117, 1121 (2d Cir. 1994). Further:

Supervised release and parole are virtually identical systems. Under each, a defendant serves a portion of a sentence in prison and a portion under supervision outside prison walls. If a defendant violates the terms of his release,

he may be incarcerated once more under the terms of his original sentence. More specifically, a defendant's original sentence determines the length of the term of parole (indirectly) or supervised release (directly). It is also the original sentence that establishes how long the defendant may be required to serve following revocation in the case of both parole and supervised release violations. Finally, it is the original sentence that is executed when the defendant is returned to prison after a violation of the terms of both parole and supervised release.

*United States v. Paskow*, 11 F.3d 873, 881 (9th Cir.1993).

UCMJ, alleging confinement was administered in a cruel and unusual manner. *United States v. Brennan*, 58 M.J. 351, 353 (C.A.A.F.2003). The Supreme Court has concluded that an official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged must be, objectively, a "sufficiently serious act or omission" that results in the denial of "the minimal civilized measure of life's necessities," and (2) the prison official must have a "sufficiently culpable state of mind" amounting to "deliberate indifference" to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

■ The MSR conditions imposed in the appellant's case were neither cruel and unusual punishment under the *Farmer* Eighth Amendment analysis,[7] nor cruel or unusual punishment under Article 55, UCMJ. *See, e.g., Brennan*, 58 M.J. at 351; *White*, 54 M.J. at 469; *Erby*, 54 M.J. at 476; *United States v. Avila*, 53 M.J. 99 (C.A.A.F.2000); *United States v. Sanchez*, 53 M.J. 393 (C.A.A.F. 2000).

Indeed, we do not construe the conditions of MSR as punishment at all. "The infliction of punishment is a deliberate act intended to chastise or deter. This is what the word means today; it is what it meant in the eighteenth century." *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (quoting *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir.1985)). Nothing in the record indicates a punitive intent by the DOD, the Air Force, or the AFC & PB in enacting and implementing MSR. Finally, unlike the federal civilian system, supervised release in the DOD is not itself punishment because it is not part of the sentence. *See generally*

*United States v. Gilchrist*, 130 F.3d 1131, 1134 (3d Cir.1997).

Accordingly, we hold that the AFC & PB did not increase the severity of the appellant's sentence in violation of Article 55, UCMJ, and the Eighth Amendment.[8]

*Jurisdiction to Review the Administration of MSR*

■ We have concluded that there is adequate legal authority for a DOD MSR program, and that implementation of the program does not amount to punishment in the military system. The issue remains whether we have jurisdiction to review the actual administration of MSR in the appellant's case. The appellant's first assigned error questioned whether he was "improperly placed on excess appellate leave and denied pay and allowances in violation of Article 76a, UCMJ, when his sentence to confinement was not completed or remitted and he was forced to fulfill conditions of mandatory supervision upon his release from confinement."

Consistent with this Court's decisions in *Towns* and *Haymaker*, we conclude that we do not have jurisdiction to review MSR administration. Again, we possess "no general supervisory authority with respect to military justice or authority over actions administering sentences of military prisoners." *Towns*, 52 M.J. at 833. The administration of sentences, to include placement of released inmates on excess appellate leave, is a matter left to the military departments.[9]

*Grafting Federal MSR Practice into the Rules for Courts–Martial*

In his final two assignments of error, the appellant would have us graft federal civilian MSR procedures to court-martial practice and procedure.[10] In light of our conclusions above, we find no basis to apply the exten-

7. *See also Smith v. Doe*, 538 U.S. 84, 105, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (nonpunitive purpose of implementing regulations/instructions).

8. In light of our conclusion about the nature of MSR, we need not decide whether the appellant exhausted his administrative remedies prior to alleging cruel and unusual punishment. We believe the appellant could have requested modification or removal of some or all MSR conditions through his probation officer or to the AFC &

PB. However, there is no indication that avenue was clearly explained to him.

9. The Air Force procedures for required and voluntary excess leave are set out in AFI 51–201, *Administration of Military Justice*, ¶ 9.12 (2 Nov 1999). We note the instruction should, but does not, explicitly mention MSR in the context of release of inmates on parole and MSR.

10. The appellant contends the imposition of conditions of mandatory supervision on him violates

sive, and fundamentally different, federal civilian MSR scheme to military practice. There is also no basis to require MSR consideration in military presentencing procedure; it is well established that members are sentenced without regard to collateral administrative effects of the sentence. *United States v. Murphy,* 26 M.J. 454, 457 (C.M.A. 1988); *United States v. Griffin,* 25 M.J. 423, 424 (C.M.A.1988); *United States v. Quesinberry,* 12 USCMA 609, 31 C.M.R. 195, 198, 1962 WL 4393 (C.M.A.1962); *Cf. United States v. Hannan,* 17 M.J. 115, 123 (C.M.A. 1984) (holding that the military judge was free to inquire whether accused and counsel had discussed parole eligibility or other possible collateral results of conviction, but was under no obligation to do so).

the Due Process Clause because the military judge did not announce a period of MSR or any of its conditions as part of the sentence. The appellant also contends that his pleas of guilty

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.

are improvident because the military judge did not inform him prior to accepting his pleas that he could be additionally punished in unspecified ways.