UNITED STATES, Appellee

v.

Timothy J. PENA, Senior Airman
U.S. Air Force, Appellant

No. 06-0091

Crim. App. No. 35397

United States Court of Appeals for the Armed Forces

Argued October 16, 2006

Decided January 16, 2007

EFFRON, C.J., delivered the opinion of the Court, in which BAKER and ERDMANN, JJ., joined.

STUCKY and RYAN, JJ., did not participate.

Counsel

For Appellant: Captain Vicki A. Belleau (argued); Lieutenant Colonel Mark R. Strickland and Major Sandra K. Whittington (on brief).

For Appellee: Captain Jefferson E. McBride (argued); Colonel Gary F. Spencer and Lieutenant Colonel Robert V. Combs (on brief).

Military Judge: Patrick M. Rosenow

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted Appellant, pursuant to his pleas, of attempted indecent assault, indecent assault, indecent exposure, indecent language, and adultery, in violation of Articles 80 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 934 (2000), respectively. The sentence adjudged by the court-martial and approved by the convening authority included a dishonorable discharge, confinement for one year, and reduction to the lowest enlisted grade. The convening authority deferred mandatory forfeitures until the date of the action, and waived automatic forfeitures for a period of six months, directing payment of the mandatory forfeitures to Appellant's spouse for the benefit of his children. The United States Air Force Court of Criminal Appeals affirmed. United States v. Pena, 61 M.J. 776 (A.F. Ct. Crim. App. 2005).

On Appellant's petition, we granted review of the following issues:

> I. WHETHER THE APPELLANT WAS IMPROPERLY PLACED ON EXCESS APPELLATE LEAVE AND DENIED PAY AND ALLOWANCES IN VIOLATION OF ARTICLE 76a, UCMJ, WHEN HIS SENTENCE TO CONFINEMENT WAS NOT COMPLETED OR REMITTED AND HE WAS FORCED TO FULFILL CONDITIONS OF MANDATORY SUPERVISION UPON HIS RELEASE FROM CONFINEMENT.

> II. WHETHER THE AIR FORCE CLEMENCY AND PAROLE BOARD INCREASED THE SEVERITY OF

> APPELLANT'S SENTENCE IN VIOLATION OF ARTICLE 55, UCMJ, AND THE EIGHTH AMENDMENT WHEN IT FORCED APPELLANT TO FULFILL CONDITIONS OF MANDATORY SUPERVISION THAT ARE NOT AUTHORIZED BY THE UCMJ.
>
> III. WHETHER THE IMPOSITION OF CONDITIONS OF MANDATORY SUPERVISION ON APPELLANT VIOLATES THE DUE PROCESS CLAUSE BECAUSE THE MILITARY JUDGE DID NOT ANNOUNCE A PERIOD OF MANDATORY SUPERVISED RELEASE OR ANY OF ITS CONDITIONS AS PART OF THE SENTENCE.
>
> IV. WHETHER APPELLANT'S PLEAS OF GUILTY ARE IMPROVIDENT BECAUSE THE MILITARY JUDGE DID NOT INFORM APPELLANT PRIOR TO ACCEPTING HIS PLEAS THAT HE COULD BE ADDITIONALLY PUNISHED IN UNSPECIFIED WAYS.

Appellant, who was sentenced to confinement for one year, served all but seventy-two days of that period in confinement at the Naval Consolidated Brig Miramar, in San Diego, California. During the remaining seventy-two days, the Government placed Appellant in the Department of Defense (DoD) Mandatory Supervised Release program against his wishes.

The granted issues concern Appellant's early release from his sentence to confinement. Part I of this opinion summarizes the relationship between the DoD Mandatory Supervised Release program and other confinement and release programs in the military justice system. Part II describes the sentencing proceedings at Appellant's trial and the terms and conditions

applied to Appellant through the Mandatory Supervised Release program.  Part III considers whether those terms or conditions provide a basis for relief under applicable standards of review.  For the reasons set forth below, we affirm.


I.  THE DoD MANDATORY SUPERVISED RELEASE PROGRAM

Persons sentenced to confinement by a court-martial serve their period of imprisonment in facilities administered by the DoD, subject to exceptions not pertinent to the present appeal. Dep't of Defense Dir. 1325.4, Confinement of Military Prisoners and Administration of Military Correctional Programs and Facilities (Aug. 17, 2001) [hereinafter DoD Dir. 1325.4].  The DoD traditionally has administered a variety of early release procedures for persons in confinement, such as good time and earned credits, return to duty programs, and parole.  See Dep't of Defense, Instr. 1325.7, Administration of Military Correctional Facilities and Clemency and Parole Authority, enclosure 26, para. E26.1-E26.5. (July 17, 2001, incorporating Change 1, June 10, 2003) [hereinafter DoD Instr. 1325.7].

Parole is a form of conditional release from confinement under the guidance and supervision of a United States probation officer.  Id. at enclosure 2, para. E2.1.11.  In addition, parole is a voluntary program, in which the inmate applies to participate during the balance of his or her period of approved

confinement.  Id. at para. 6.17; Dep't of Defense, Sentence
Computation Manual 1325.7-M, at AP1.1.12 (July 27, 2004,
Administrative Reissuance, incorporating Change 1, Aug. 30,
2006) [hereinafter DoD Manual 1325.7-M].  The decision as to
whether parole should be granted is vested in the Clemency and
Parole Boards of the military departments.  The decision is
highly discretionary.  See DoD Instr. 1325.7, at para. 6.16.
Prior to release on parole, the inmate must have an approved
parole supervision plan, and agree in writing to abide by the
plan and conditions of supervision.  Id. at para. 6.17.9.1.
Violation of the terms and conditions may result in revocation
of parole.  Id. at para. 6.17.10.  In general, the supervision
of persons on parole is designed to enhance the person's
reintegration into civilian society.  See id. at para. 6.17.9.2.

In 2001, the DoD introduced an additional early release
mechanism, the Mandatory Supervised Release program.  Mandatory
Supervised Release covers specified classes of prisoners who
have served sufficient time in confinement to be considered for
parole, but who are not granted parole.  Id. at para. 6.20.1.
As with parole, Mandatory Supervised Release applies from the
time of release from prison until the end of the prisoner's
approved sentence, and it may be revoked for violation of the
terms and conditions of the program.  Id. at paras. 6.17.9.4,
6.17.9.6, 6.20.6.; DoD Manual 1325.7-M, at AP1.1.12.

In contrast to parole, which is a voluntary program, a prisoner may be placed involuntarily on Mandatory Supervised Release.  See generally Policy Letter, Clemency and Parole Boards Mandatory Supervised Release Policy (May 23, 2003) (in Brief of Appellant at app. E).  In addition to the conditions that may be imposed during parole, the Clemency and Parole Board may use the Mandatory Supervised Release program to impose "any additional reasonable supervision conditions . . . that would . . . further an orderly and successful transition to civilian life for released prisoners, and which would better protect the communities into which prisoners are released."  DoD Instr. 1325.7, at para. 6.20.2.  A prisoner who refuses to accept Mandatory Supervised Release or the conditions imposed by the Clemency and Parole Board is subject to discipline, including trial by court-martial.  Clemency and Parole Boards Mandatory Supervised Release Policy Letter (May 23, 2003).  See Policy Letter at ¶ E.5.

Mandatory Supervised Release differs in significant respects from the authority of the federal civilian courts to include in a sentence "a term of supervised release after imprisonment."  18 U.S.C. § 3583(a) (2000).  Unlike the federal civilian program, which is based on express statutory authority and involves terms that are adjudged as part of the sentence, the military's Mandatory Supervised Release program is based on

executive authority, and involves terms that are imposed by executive branch officials well after completion of trial.

## II. THE ADJUDICATION AND ADMINISTRATION OF APPELLANT'S SENTENCE

### A. THE PROCEEDINGS AT TRIAL

After Appellant entered a plea of guilty to various charged offenses, the military judge conducted an inquiry into the providency of the plea. See Rule for Courts-Martial (R.C.M.) 910. As part of the inquiry, the military judge explained the maximum punishment Appellant faced, based solely on the offenses to which he pled guilty. Appellant agreed with the military judge that he faced a dishonorable discharge from the service, forfeiture of all pay and allowances, forty-nine years of confinement, reduction to the grade of E-1, and a fine. The military judge asked Appellant if he had any questions about the specific punishments he faced, and Appellant responded in the negative. In addition, the military judge asked defense counsel whether he and Appellant had discussed the administrative ramifications of the punishments. Defense counsel responded in the affirmative. Neither the military judge nor defense counsel mentioned any specific administrative consequence.

Subsequently, during the sentencing proceeding the military judge reminded Appellant that he was facing a lengthy amount of confinement and asked him whether he had any additional

questions.  Appellant responded in the negative.  The military judge sentenced Appellant to a dishonorable discharge, one year of confinement, and reduction to the grade of E-1.

### B.  PLACEMENT OF APPELLANT IN THE MANDATORY SUPERVISED RELEASE PROGRAM

The Air Force assigned Appellant to serve his period of confinement at the Naval Consolidated Brig Miramar.  During that period, the Air Force Clemency and Parole Board determined that he would not be granted parole.  The Board ordered him to participate in the Mandatory Supervised Release program for a seventy-two day period, terminating on his maximum release date at the end of the adjudged period of confinement.

The Certificate of Mandatory Supervised Release (certificate) issued to Appellant by the Board set forth sixteen conditions generally applicable to persons in the program, along with an attachment containing nine additional conditions tailored to Appellant's circumstances.  The additional conditions required Appellant to:  (1) participate in a community-based sex offender treatment program with a duration of at least twenty-four months, at his own expense; (2) have no contact with the victims without the prior approval of his probation officer; (3) abstain from the use and possession of pornography or sexually stimulating materials; (4) consent to periodic examinations of his computer, to include retrieval and

copying of all data from his computer and/or removal of his computer equipment for the purpose of conducting a more thorough inspection; and consent to having installed on his computer, at his expense, any hardware or software monitoring systems; (5) abstain from adult book stores, sex shops, topless bars, or other locations that act as a sexual stimulus; (6) register as a sex offender in accordance with state law; (7) attend and participate in three meetings weekly concerning alcohol and narcotics abstention; (8) waive confidentiality in his relations with the sponsor of the treatment program so that his probation officer may monitor his progress in the program; and (9) abstain from consuming alcohol. The certificate provided that the term of mandatory supervision would expire on Appellant's maximum release date. The confinement officials at Miramar advised Appellant that he was required to accept the conditions in the certificate. If Appellant refused to do so, he could be prosecuted in a court-martial for failure to obey an order or dereliction of duty, and he could be sent before a disciplinary board with the potential of losing good time credits and confinement privileges.

A month prior to his proposed release under the Mandatory Supervised Release program, Appellant submitted a letter to the Commander of the confinement facility at Miramar requesting permission to decline participation in the program without

losing his good time credits.  Appellant stated that he could adhere to all of the conditions in the attachment except for participation in the sex offender treatment program.  He noted that while the state of Illinois would pay for his participation in a treatment program in Chicago, he would have to make a six-hour round trip from his expected place of residence.  He added that he had not yet obtained a job, his wife was unable to work due to the imminent birth of a child, and his family would have no income.  He also noted that his mother would provide his family with room, board, and incidentals, but that the burden would stretch "her financial situation beyond its limits."  He stated that "the bottom line is we cannot pay for transportation [to the treatment program] until I have secured a job and financially reestablished [my] family."

Appellant did not receive a response.  When he reached his minimum release date with seventy-two days left in his period of confinement, he was released into the Mandatory Supervised Release program on June 22, 2003.  The post-trial record contains a declaration signed by Appellant on July 10, 2003, in which he noted a number of problems created by his participation in the Mandatory Supervised Release program.  The declaration notes that he was unable to stop in Colorado to ship his household goods to Illinois, that he incurred a ten dollar per week expenditure for transportation to the sex offender

treatment program, that he was required to attend Alcoholics Anonymous classes three times a week at night and sex offender treatment classes once a week during the day, that he had various other appointments and a requirement to give a urine sample on short notice every two weeks, and that the conditions of mandatory supervision left him unable to find work to support his family. The declaration was submitted when Appellant had completed eighteen out of the seventy-two days of his period of mandatory supervised release. Although the declaration noted that he was not employed, it did not describe his living circumstances, sources of support, or overall financial condition. The record contains no further information documenting the impact of the Mandatory Supervised Release program on Appellant during the remaining fifty-four days that he was in the program. In addition, the record contains no indication that he was subjected to any of the conditions of the Mandatory Supervised Release program after the end of the seventy-two day period.

## III.  DISCUSSION

### A.  THE TERMS AND CONDITIONS
### OF APPELLANT'S MANDATORY SUPERVISED RELEASE
### (ISSUES II, III, AND IV)

At the outset, we note that Appellant has challenged the authority of the DoD to establish the Mandatory Supervised

Release program in the absence of express statutory authority.

Appellant asks us to invalidate a program under which the DoD releases individuals from prison prior to the completion of their adjudged sentence to confinement. On direct appeal, the scope of our review does not extend to supervision of all aspects of the confinement and release process. United States v. Towns, 52 M.J. 830, 833 (A.F. Ct. Crim. App. 2000), aff'd, 55 M.J. 361 (C.A.A.F. 2001). Our review of post-trial confinement and release conditions on direct appeal is limited to the impact of such conditions on the findings and the sentence. See Article 67(c), UCMJ, 10 U.S.C. § 867(c) (2000); United States v. Spaustat, 57 M.J. 256, 263 (C.A.A.F. 2002) (responsibility for determining how much good time credit, if any, will be awarded is an administrative responsibility, vested in the commander of the confinement facility). Accordingly, our review in the present appeal focuses on whether the post-trial conditions at issue: (1) constituted cruel or unusual punishment or otherwise violated an express prohibition in the UCMJ; (2) unlawfully increased Appellant's punishment; or (3) rendered his guilty plea improvident. To the extent that the issues raised by Appellant otherwise challenge the administration of the Mandatory Supervised Release program, those matters -- including questions regarding the underlying legal authority for the program -- are not before us on direct review.

12

1.  Cruel or Unusual Punishment

The Eighth Amendment prohibits "cruel and unusual punishments."  U.S. Const. amend. VIII.  Similarly, Article 55, UCMJ, 10 U.S.C. § 855 (2000), prohibits "cruel or unusual punishment."  Article 55, UCMJ, also prohibits specified punishments, such as use of irons except for the purpose of safe custody, which are not at issue in the present appeal.  See also Article 12, UCMJ, 10 U.S.C. § 812 (2000) (prohibition on confinement in immediate association with enemy prisoners).

We review allegations of cruel or unusual punishment under a de novo standard.  United States v. White, 54 M.J. 469, 471 (C.A.A.F. 2001).  In our evaluation of both constitutional and statutory allegations of cruel or unusual punishment, we apply the Supreme Court's Eighth Amendment jurisprudence "in the absence of legislative intent to create greater protections in the UCMJ."  United States v. Lovett, 63 M.J. 211, 215 (C.A.A.F. 2006).

The Eighth Amendment prohibits punishments that are "'incompatible with the evolving standards of decency that mark the progress of a maturing society, or which involve the unnecessary and wanton infliction of pain.'"  Id. at 214 (quoting Estelle v. Gamble, 429 U.S. 97, 102-03 (1976)).  Although the conditions at issue in the present appeal implicate

13

other legal issues, as discussed below, none of these conditions constitute cruel or unusual punishment within the Eighth Amendment standards articulated by the Supreme Court.  E.g., 18 U.S.C. § 3583 (2000) (describing the conditions of mandatory release that may be imposed in criminal trials in the federal district courts).

2.  Impact on the adjudged sentence

    Appellant contends that his punishment was increased without providing the requisite constitutional, statutory, and regulatory components of notice and an opportunity to respond. We review such claims de novo.  United States v. Rollins, 61 M.J. 338, 343 (C.A.A.F. 2005).

    The military sentencing process provides notice of the punishments at issue, an adversarial proceeding, and formal announcement of the sentence.  See U.S. Const. amend. V; Articles 53, 56, and 60, UCMJ, 10 U.S.C. §§ 853, 856, 860 (2000); R.C.M. 1001-1007.  A servicemember "cannot be subjected to a sentence greater than that adjudged" by the court-martial. United States v. Stewart, 62 M.J. 291, 294 (C.A.A.F. 2006) (citing Waller v. Swift, 30 M.J. 139, 143 (C.M.A. 1990)).  Cf. White, 54 M.J. at 472 (noting our Court's "authority to ensure that the severity of the adjudged and approved sentence has not been unlawfully increased by prison officials").  Although

14

reviewing authorities have the power to commute a sentence to a different form of punishment, see Article 60(c)(2), UCMJ; Article 71, UCMJ, 10 U.S.C. §§ 871 (2000), this authority may not be exercised in a manner that increases the severity of the punishment. United States v. Carter, 45 M.J. 168, 170 (C.A.A.F. 1996); Waller, 30 M.J. at 143; see R.C.M. 1107(d)(1), 1107(f)(2). The question of whether a change in the form of punishment increases the severity of the punishment is contextual, requiring consideration of "all the circumstances in a particular case." Carter, 45 M.J. at 170.

The foregoing considerations apply only to matters that constitute "punishment" within the meaning of the criminal law. As a general matter, the collateral administrative consequences of a sentence, such as early release programs, do not constitute punishment for purposes of the criminal law. See, e.g., United States v. Griffin, 25 M.J. 423, 424 (C.M.A. 1988) (impact of conviction on retirement benefits is a collateral administrative consequence, inappropriate for consideration at sentencing); United States v. Murphy, 26 M.J. 454, 457 (C.M.A. 1988) (classifying eligibility for a particular squadron as a collateral administrative consequence not to be considered in sentencing); United States v. Hannan, 17 M.J. 115, 123 (C.M.A. 1984) (recognizing parole eligibility as a collateral administrative consequence of sentence). Whether a particular

aspect of an early release program is administered in a manner that constitutes punishment requires a case-specific inquiry. Compare California Dep't of Corrections v. Morales, 514 U.S. 499 (1995), with Lynce v. Mathis, 519 U.S. 433 (1997).  Cf. United States v. Fischer, 61 M.J. 415, 420 (C.A.A.F. 2005) (setting forth factors to be considered in determining whether governmental actions are regulatory or punitive in nature) (citing Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963))).

The terms and conditions of Appellant's Mandatory Supervised Release, as initially conveyed to him, potentially raised serious questions as to whether Appellant's sentence had been increased.  On its face, the attachment accompanying the Certificate of Mandatory Release suggested that Appellant was required to subject himself involuntarily to a sex offender treatment program for twenty-four months, a period extending well beyond his maximum release date.  In addition, the attachment suggested that Appellant was required to expend a substantial amount of his own funds to pay for the treatment program and computer software.  As the record indicates, however, and as defense counsel confirmed during oral argument, none of the conditions were imposed upon Appellant after his maximum release date, and he was not required to pay for his treatment program or any computer software.

Although the defense brief sets forth a facial challenge to the Mandatory Supervised Release program and the conditions communicated to Appellant prior to his release, the defense has provided few details as to any actual impact on Appellant. On May 17, 2003, prior to his release, Appellant submitted a request for exemption from one of the conditions, participation in a treatment program, based upon concern as to what might occur upon release. That statement provides no information as to what actually happened to Appellant after he was released. On July 10, 2003, eighteen days after he was released under the Mandatory Supervised Release program, Appellant signed a declaration describing various difficulties that he had encountered in moving his household goods and obtaining employment as result of the requirements imposed by the Mandatory Supervised Release program. He also noted that he was required to expend ten dollars a week for transportation to a treatment program. The declaration, however, does not indicate what impact, if any, the Mandatory Supervised Release program had on Appellant's sentence during the remaining fifty-four days prior to his maximum release date.

In the context of an issue that requires a showing of increased punishment, it is not sufficient to show that the conditions of mandatory release imposed some burdens on a released prisoner. All conditions of release impose burdens to

some degree.  Those burdens, however, must be assessed in the context of release from a sentence to confinement.  The question in each case is whether the burdens are such that they result in an increase in the punishment of confinement adjudged by the court-martial.  Carter, 45 M.J. at 170.  Such an assessment requires a case-specific analysis.  See id.

We do not take lightly the impact of the Mandatory Supervised Release program on Appellant during the initial eighteen day period or during the subsequent fifty-four days. Likewise, we do not disregard the possibility that the Mandatory Supervised Release program could be imposed in a manner that increases the punishment above the punishment adjudged by a court-martial.  The burden, however, is on the party challenging the conditions to demonstrate that there has been an increase above the punishment of confinement imposed at trial.

When an appellant asks us to review the post-trial administration of a sentence, we are typically confronted by issues in which the pertinent facts are not in the record of trial.  In such a case, it is particularly important that the appellant provide us with a "clear record" of the facts and circumstances relevant to the claim of legal error.  See United States v. Miller, 46 M.J. 248, 250 (C.A.A.F. 1997).  The information about the personal, psychological, economic, and family impact of such measures is primarily in the control of

18

the party appealing the sentence, and that party bears the responsibility of submitting detailed documentation.  The generalized statements in Appellant's July 10, 2003, declaration, which cover only a portion of the time Appellant was in the Mandatory Supervised Release program, do not provide the clear record upon which we could evaluate whether the conditions of mandatory supervised release in this case produced an increase in Appellant's sentence.  Accordingly, Appellant has not demonstrated that his participation in the Mandatory Supervised Release program produced an impermissible increase in the punishment adjudged by the court-martial.

3.  Effect on the providency of the guilty plea

We review claims as to the providency of a plea under a de novo standard.  United States v. Harris, 61 M.J. 391, 398 (C.A.A.F. 2005).  An appellant who challenges the providency of a guilty plea must demonstrate "a substantial basis in law and fact for questioning the guilty plea."  United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991) (quotation marks omitted).  As a general matter, the military judge does not have an affirmative obligation to initiate an inquiry into early release programs as part of the plea inquiry.  See Hannan, 17 M.J. at 123.  When the challenge concerns an appellant's claimed misunderstanding of

the collateral consequences of a court-martial, such as an early

release program, an appellant must demonstrate that:

> the collateral consequences are major and
> the appellant's misunderstanding of the
> consequences (a) results foreseeably and
> almost inexorably from the language of a
> pretrial agreement; (b) is induced by the
> trial judge's comments during the providence
> inquiry; or (c) is made readily apparent to
> the judge, who nonetheless fails to correct
> that misunderstanding.  In short, chief
> reliance must be placed on defense counsel
> to inform an accused about the collateral
> consequences of a court-martial conviction
> and to ascertain his willingness to accept
> those consequences.

United States v. Bedania, 12 M.J. 373, 376 (C.M.A. 1982).  In

the present case, Appellant has not demonstrated that the

collateral consequences actually imposed increased his

punishment.  See supra Part III.A.2.  Moreover, neither the text

of the plea agreement nor the record of the military judge's

plea inquiry contains any language that would have placed an

obligation on the military judge to address the Mandatory

Supervised Release program at that time.  See United States v.

Miller, 63 M.J. 452, 457 (C.A.A.F. 2006).  We also note that

Appellant has not claimed that his counsel was ineffective with

respect to explaining collateral consequences, so we need not

address whether counsel was under any obligation to do so.  See

id. at 458.  Under the circumstances of this case, Appellant has

not demonstrated that his plea was improvident.

B. APPELLATE LEAVE (ISSUE I)

During Appellant's period of confinement, he forfeited his entitlement to pay and allowances following a six-month period in which the forfeitures were waived by the convening authority. See Article 58b(a), UCMJ, 10 U.S.C. § 858b(a) (2000) (providing for mandatory forfeiture of pay and allowances "during any period of confinement or parole" when the approved sentence of a general court-martial includes a punitive discharge). Following his release from confinement under the Mandatory Supervised Release program, Appellant was placed on appellate leave under Article 76a, UCMJ, § 10 U.S.C. 876a (2000) (providing discretion, under military department regulations, to place a servicemember on involuntary appellate leave after the convening authority's action pending completion of appellate review when the sentence includes an unsuspended punitive discharge). The pertinent Air Force regulation provides: "An accused awaiting appellate review of an unsuspended punitive separation, who . . . already completed the period of confinement, may be involuntarily placed on excess leave . . . ." Dep't of the Air Force, Instr. 51-201, Administration of Military Justice para. 9.12.1 (Nov. 2, 1999). Although a person on involuntary appellate leave remains subject to military jurisdiction and possible recall, the individual returns to civilian life throughout the period of leave. See 10 U.S.C. § 701(e) (2000)

(providing that any leave prior to discharge is still considered military service); 10 U.S.C. § 706(c) (2000) (acknowledging that a person on excess leave may obtain civilian employment). While on involuntary appellate leave, the individual is not entitled to pay and allowances. See Dep't of Defense, Dir. 7000.14-R, Department of Defense Financial Management Regulation, volume 7A, ch. 35, § 350101, para. B (Nov. 2005) (requiring pay only for the portion of appellate leave that a servicemember chooses to take as accrued leave); Dep't of the Air Force, Instr. 36-3003, Military Leave Program para. 6.8 (Oct. 20, 2005) (providing excess leave for a servicemember that has exhausted accrued leave, and noting that "[e]xcess leave is a no-pay status").

Appellant contends that he should not have been placed on involuntary appellate leave for two reasons. First, he contends that as a practical matter he remained on active duty because the conditions imposed upon him by the Mandatory Supervised Release program constituted military duties for which he should have been paid. We need not decide whether such a claim is within the scope of our review under Article 67, UCMJ, because Appellant has not demonstrated that the conditions of his supervised release were so restrictive in nature or duration that they had the claimed effect of retaining him on active duty without pay. See supra Part III.A.2. Second, he contends that

he did not "complete" his period of confinement under the Air Force Regulation because he was under a continuing threat of return to prison if he violated the terms of his release. The relationship between completion of confinement and commencement of leave is a matter governed by administrative regulations and service practices. Appellant has not demonstrated that the applicable regulations, either on their face or as applied, violated Article 76a, UCMJ, or any other provision of the UCMJ. Under these circumstances, Appellant has not demonstrated that this claim falls within the scope of our review under Article 67, UCMJ.

## IV. DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.