# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist ANDREW W. BOWHALL**
**United States Army, Appellant**

ARMY 20170357

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge
Colonel Charles C. Poché, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Captain Patrick G. Hoffman, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Hannah E. Kaufman, JA (on brief).

13 February 2019

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

In his lone assignment of error, appellant asserts he was subjected to cruel and unusual punishment when he temporarily failed to receive treatment for thyroid cancer while in post-trial confinement. At a minimum, we find appellant cannot establish that prison officials were deliberately indifferent to his medical needs.

While not expressly raised by appellant, we also address: (1) whether the convening authority abused his discretion in failing to defer appellant's confinement to avoid delaying his cancer treatment; and (2) whether appellant's sentence is inappropriately severe in light of his post-trial submissions. Under the specific facts of this case, we find no relief is warranted.

**BACKGROUND**

On 14 June 2017, appellant pleaded guilty to one specification of sexual assault of a child and one specification of adultery.[1]

During sentencing, the defense presented testimony from appellant's supervisor, Staff Sergeant (SSG) DB, regarding appellant's cancer treatments and surgeries. The defense also presented an unsworn statement from appellant. Among other things, appellant said, "I just went through a major surgery for my second bout of cancer," "I have been told [the cancer will] likely . . . spread again," and "I don't know how much time I do have left in this life."

In rebuttal, the government presented testimony from Mr. MH, a Special Victim Witness Liaison, which included the following exchange:

> Q. . . . And to the best of your knowledge would someone with cancer be able to obtain treatment while they are incarcerated?
>
> A. Yes, sir. Part of what is sent is the medical records along with, like I said, on the confinement procedures checklist the physician would be listed with a phone number for that physician if they need to contact the physician for exact advice as to what treatment had they already prescribed and then what treatment they are going to continue with.

The military judge sentenced appellant to a dishonorable discharge, confinement for three years, and reduction to the grade of E-1.[2]

---

[1] A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of sexual assault of a child and one specification of adultery, in violation of Articles 120b and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920b, 934 (2012) (UCMJ). The military judge sentenced appellant to a dishonorable discharge, confinement for three years, and reduction to the grade of E-1. The convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for eighteen months, and reduction to the grade of E-1.

[2] Upon reviewing the quantum portion of the pretrial agreement, the military judge noted the convening authority was required to disapprove any confinement in excess of eighteen months but could approve any other lawfully adjudged punishment.

That same day, appellant's trial defense counsel submitted a "Request for Deferral of Confinement and Deferment/Waiver of Forfeitures" to the convening authority. This request explained that appellant "has recurring thyroid cancer," "had surgery twice to remove the cancer and received extensive chemotherapy," and "[c]onfinement will interfere with his ability to receive quality medical treatment."

On 21 June 2017, appellant's assistant trial defense counsel prepared a "Memorandum for Record" regarding the "Inadequacy of Medical Treatment for Specialist Andrew Bowhall at Otero County Prison Facility," where he was taken "on a temporary basis pending transfer to a long-term confinement facility." Among other things, the memorandum outlined several issues with appellant's medications during his first week in confinement. Initially, appellant "had not received any medication," which led to "pain and swelling so severe in his neck area that he could not breathe." Appellant subsequently received "some of his medications," but "in incorrect dosages or at incorrect times."

The memorandum also noted the defense team had contacted Major (MAJ) ON, the Designated Health Authority at the Northwest Joint Regional Correctional Facility (JRCF) at Joint Base Lewis-McChord (JBLM). Based on his conversation with appellant's treating physician at Fort Bliss, MAJ ON "recommended that SPC Bowhall remain at Fort Bliss to continue [cancer] treatment as to avoid premature mortality," and "a transfer to JBLM from Fort Bliss will result in a major impact to [appellant's] continuity of care."

On 22 June 2017, appellant's trial defense counsel submitted an "Addendum to Deferral of Confinement Request." Notably, the trial defense counsel submitted the following addendum enclosures: (1) several emails regarding appellant's medical treatment; and (2) the memorandum created by the assistant trial defense counsel.[3] The emails contained the opinions of MAJ ON and Dr. JA, the Staff Endocrinologist at William Beaumont Army Medical Center in El Paso, Texas.

In his email, MAJ ON wrote:

> BLUF: Prisoner Bowhall should be afforded a deferment and permitted to participate in his medical treatment where he is prior to transfer to another facility.
>
> . . . .

---

[3] We specifically commend appellant's trial defense counsel for their timeliness and diligence in preparing and submitting appellant's deferment request, addendum, and accompanying documentation.

3

In complicated cases such as these, continuity of care can exponentially increase a positive prognosis: this starts with a physician familiar with the case history and a plan already in place. Though he would undoubtedly get excellent care at [JBLM], he would be starting over and there are inherent delays that come with transferring a patient and getting them into a new treatment team. This wait would be further extended since he would have to wait until transfer to JBLM.

. . . .

I highly recommend [appellant] be given the opportunity to receive his treatment there under the care of Dr. [JA]. This would ensure the best access to care, decrease potential health related complications, and ensure that the system is not unintentionally impeding the best care possible for him and putting him at unnecessary risk.

For his part, Dr. AN provided appellant's medical update, treatment plan, and his medical recommendation:

He recently underwent extensive neck surgery and multiple cancer containing lymph nodes were removed. Most recent cancer marker shows persistent disease however the burden seems to be decreased.

. . . .

After about 2 to 3 weeks of [a low iodine] diet he will need to be admitted to WBAMC for high dose radioactive treatment and kept in isolation. Imaging studies will be scheduled about 10 days after treatment. At that time his thyroid hormone will be restarted and will need to be adjusted to ensure he is euthyroid. I would expect the whole process will take up to 3 months.

I would strongly recommend that his treatment is not delayed. Any delays may contribute to cancer spread and lower chances of success, subsequently causing his premature mortality.

On 26 June 2017, the convening authority disapproved appellant's request. In explaining his decision, the convening authority said he "considered the interests of the accused, the community's interest, the effect upon good order and discipline, the accused's family situation, his service record, the sentence adjudged, and the interests of justice in the imposition of the accused's adjudged punishment on its effective date."

On 6 July 2017, appellant was transferred to the JRCF. Prior to his arrival, appellant's medical treatment was discussed between Army Corrections Command and MAJ ON. Approximately one month after his arrival at the JRCF, appellant filed a series of complaints related to his diet.

On 16 August 2017, MAJ ON provided a written response: "[Appellant] and I have discussed his concerns. We discussed a plan to address his concerns with his treatment team. [Appellant] is satisfied with this plan and will bring up any subsequent concerns with me." Appellant signed an acknowledgment of MAJ ON's response, and he did not file any subsequent complaints regarding his medical treatment.[4] On 13 September 2017, appellant began receiving his radiation treatments.

On 11 November 2017, the trial defense counsel submitted appellant's request for clemency under Rule for Courts-Martial (R.C.M.) 1105. This request summarized the timeline of events, cited to case law of inadequate medical care, and included a written letter from the appellant.

On 1 December 2017, and pursuant to the pretrial agreement, the convening authority approved only so much of the adjudged sentence as provided for a dishonorable discharge, confinement for eighteen months, and reduction to the grade of E-1.

---

[4] The next day, Sergeant First Class (SFC) JR from the 66th Military Police Company at JBLM provided a written response to another one of appellant's complaints over his diet. This response explained that SFC JR and appellant "went over [the] diet plan paperwork that I approved through the medical personnel located in the nuclear medicine department at [Madigan Army Medical Center] . . . . In conclusion, DFAC can supply proper dietary needs." As before, appellant provided a written acknowledgment to this response and did not file any subsequent complaints.

**LAW AND DISCUSSION**

*A. Eighth Amendment and Article 55*

Appellant asserts his temporary delay in receiving cancer treatment while in post-trial confinement constituted cruel and unusual punishment. At a minimum, we find appellant has not shown that prison officials were deliberately indifferent to his medical needs.

We review allegations of cruel and unusual punishment under a de novo standard. *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001). In evaluating these claims, "we apply the Supreme Court's Eighth Amendment jurisprudence 'in the absence of legislative intent to create greater protections in the UCMJ.'" *United States v. Pena*, 64 M.J. 259, 265 (C.A.A.F. 2007) (quoting *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006)).

"Conditions that violate the Eighth Amendment include 'deliberate indifference to serious medical needs.'" *White*, 54 M.J. at 474 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (Prison officials must have a "sufficiently culpable state of mind," which is one of "deliberate indifference" to inmate health).[5]

In this case, the record does not reflect deliberate indifference by prison officials towards appellant's medical needs. While there is evidence that appellant's medications were either omitted or improperly administered during his first week of confinement, this issue was seemingly addressed following the concerns raised by his trial defense counsel. In our view, following some initial missteps, appellant received baseline medical treatment from a short-term confinement facility. As such, we do not find that appellant's initial treatment in Otero County constituted deliberate indifference.

Similarly, the record demonstrates that JRCF officials were reactive and responsive in addressing appellant's concerns about his diet. Within a week of appellant's first complaint, MAJ ON spoke to appellant over his treatment plan. Following this discussion, appellant was "satisfied." The very next day, SFC JR

---

[5] In *White*, our superior court also discussed *Farmer*, explaining how it "defined two factors that are necessary for an Eighth Amendment claim to succeed regarding conditions of confinement." 54 M.J. at 474. The first factor is an "objective component," in which the act or omission must be "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834) (citations omitted). The second factor, discussed above, "is subjective, testing for a culpable state of mind." *Id.*

also spoke to appellant to go over his "diet plan paperwork," which was "approved through the medical personnel located in the nuclear medicine department." Following these conversations, appellant did not file any subsequent complaints prior to starting his radiation treatments.

Finally, despite a short delay between appellant's arrival at the JRCF and his discussion with MAJ ON, this was not unusual or unexpected. In fact, in an email, MAJ ON even discussed the typical timelines for "complicated cases":

> Though [appellant] would undoubtedly get excellent care at [Madigan Army Medical Center at JBLM] . . . there are inherent delays that come with transferring a patient and getting them into a new treatment team. This wait would be further extended since he would have to wait until transfer to JBLM. Upon arrival, he would have to be in-processed fully into the facility, have to wait for his first appointment with a specialist to be assigned a care team. Only after all this would treatment begin.

This description appears consistent with the record, which inherently reflects that appellant completed in-processing, continued receiving his medication, met with medical personnel, and started his radiation treatments. Under such circumstances, we do not find that JRCF officials were deliberately indifferent to appellant's medical needs. To the contrary, we find that JRCF officials consistently sought to provide the "excellent care" that MAJ ON stated appellant would "undoubtedly" receive.[6]

## B. Deferral of Confinement

While not expressly raised by appellant, we next address whether the convening authority abused his discretion in failing to defer appellant's confinement. *See* R.C.M. 1101(c)(3) ("The decision of the authority acting on the deferment request shall be subject to judicial review only for abuse of discretion.").

We conduct this analysis for two separate reasons. First, several portions of appellant's brief reference that the convening authority knew that appellant's cancer treatment would be temporarily delayed unless he approved the deferment request.

---

[6] "However, it is not constitutionally required that health care be 'perfect' or 'the best obtainable.'" *White*, 54 M.J. at 475 (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)). Instead, an inmate is entitled to "reasonable medical care, but not the 'optimal' care." *Id.* (internal quotation marks in original).

Second, any such error by the convening authority could impact our view of the appropriateness of appellant's sentence. *See United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016) (holding that sentence appropriateness relief "based on a legal deficiency in the post-trial process" is "clearly authorized" by Article 66(c)).

For this issue, the standard of review is critical to our analysis: "[t]o find an abuse of discretion requires more than a mere difference of opinion – the challenged ruling must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 132 (C.A.A.F. 2000) (citations omitted).

Ultimately, while we may not have reached the same decision as the convening authority, we do not find he abused his discretion. Most notably, in denying appellant's request, the convening authority specifically listed several of the factors within R.C.M. 1101(c)(3). This included explaining that he considered "the community's interest," "the effect upon good order and discipline," "the sentence adjudged," and "the interests of justice in the imposition of the accused's adjudged punishment on its effective date." These are clearly significant interests, and we do not find that their application in this case represents an abuse of discretion.

## C. Sentence Appropriateness

As several of appellant's post-trial submissions included contextual information that was not presented to the military judge, we briefly address the appropriateness of appellant's sentence.

Under Article 66, a Court of Criminal Appeals "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Our superior court has explained this language "clearly establishes a discretionary standard for sentence appropriateness relief." *Gay*, 75 M.J. at 268. The sentence appropriateness review remains "one of the unique and longstanding features of the Uniform Code of Military Justice." *United States v. Hutchison*, 57 M.J. 231, 233 (C.A.A.F. 2002).

Notably, "[w]hat constitutes the 'entire record' for review of *sentence appropriateness* has been understood to include not only the evidence admitted at trial, but also the matters considered by the convening authority in his action on the sentence." *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) (citations omitted). As such, we must consider appellant's post-trial submissions in our review. However, in doing so, we must carefully toe the line between sentence appropriateness and clemency: while "[s]entence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves," "[c]lemency involves bestowing mercy – treating an

8

accused with less rigor than he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

Under the specific facts of this case, providing any sentencing relief under Article 66 would constitute clemency, which we may not do. *See United States v. Nerad*, 69 M.J. 138, 145-47 (C.A.A.F. 2010) (holding that despite our significant discretion in reviewing the appropriateness of a sentence, we may not engage in acts of clemency). Upon consideration of the entire record, to include appellant's post-trial submissions, we find the approved sentence is appropriate.

## CONCLUSION

The findings of guilty and the sentence are AFFIRMED.

Judge HAGLER and Judge FLEMING concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court