*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, KISOR, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Ruben CRUZ**
Damage Controlman First Class (E-6), U.S. Navy
*Appellant*

**No. 202400211**

_____

Decided: 20 January 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Hayes C. Larsen

Sentence adjudged 4 August 2022 by a special court-martial tried at Naval Station Norfolk, Virginia, consisting of military judge alone. Sentence in the Entry of Judgment: reduction in grade to E-1 and confinement for six months.

For Appellant:
*Lieutenant Commander Leah M. Fontenot, JAGC, USN*

For Appellee:
*Commander John T. Cole, JAGC, USN*
*Major Mary Claire Finnen, USMC*

Judge de GROOT delivered the opinion of the Court, in which Chief Judge DALY and Senior Judge KISOR joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

de GROOT, Judge:

A military judge convicted Appellant, in accordance with his pleas, of one specification of conspiracy to distribute a controlled substance and one specification of wrongful distribution of a controlled substance in violation of Articles 81 and 112a, Uniform Code of Military Justice (UCMJ).[1] The military judge sentenced Appellant to reduction to the grade of E-1 and confinement for six months.

Appellant asserts the following assignments of error: (1) Appellant's plea was improvident due to a misunderstanding of a material term of the plea agreement, and (2) Appellant's trial defense counsel was ineffective for failing to investigate how the convening authority would endorse Appellant's Fleet Reserve transfer request while advising Appellant that his request was "not in the realm" of getting disapproved by the Secretary of the Navy (SECNAV), which adversely affected Appellant's decision to plead guilty.[2] We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant, a Sailor with almost 20 years of service, pleaded guilty to the distribution of the drugs to Ms. H and Ms. S, who were inmates at the Hampton Roads Regional Jail by mailing drugs to them, and to conspiring with Ms. H and Ms. S for them to distribute the drugs, that he mailed, to other inmates at

---

[1] 10 U.S.C. §§ 881, 912a.

[2] Appellant also raised a third assignment of error: the sentence was inappropriately severe where it resulted in the loss of retirement pay and benefits worth more than 1.8 million dollars. We carefully considered the matters raised by Appellant in his brief and find it does not require discussion or relief. *See United States v. Matias* 25 M.J. 356, 361 (C.M.A. 1987).

the Hampton Roads Regional Jail.[3] Ms. H, Appellant's then-girlfriend, and Ms. S asked Appellant on several occasions, via phone calls from jail, to purchase Suboxone strips.[4] He then mailed those strips to Ms. H and Ms. S in jail, and after they received them, Ms. H and Ms. S would then sell and distribute the drugs to fellow inmates.

Just months before Appellant would have completed 20 years of service, charges were preferred, and Appellant entered into a plea agreement with the convening authority, which included limitations to the authorized punishment, forum of court-martial, and timing of his trial, among other negotiated provisions.[5] Appellant now asserts he had a misunderstanding of his opportunity to transfer to the Fleet Reserves after his conviction, thereby making his plea improvident. Appellant takes issue with the following paragraph from the plea agreement:

> I understand the approval to transfer to the Fleet Reserve List is at the sole discretion of the Secretary of the Navy, and that my request may be disapproved. I understand this or another Convening Authority/Separation Authority may recommend my transfer in a reduced pay grade or that SECNAV may approve my transfer in a reduced pay grade.[6]

Appellant argues that the plea agreement, by declaring that the convening authority could recommend transfer in a reduced pay grade, along with the military judge ensuring Appellant understood that the convening authority could not promise that Appellant would be transferred to the Fleet Reserve, implied that the convening authority would positively endorse his request. Appellant also argues that his defense counsel was ineffective for not notifying him prior to his decision to plead guilty that the convening authority could or would negatively endorse his request to transfer to the Fleet Reserve. Appellant stated that if he had known the endorsement would be negative, he would not have pleaded guilty. Appellant would have "pursued every other avenue

---

[3] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[4] Suboxone, also known as Buprenorphine, is a Schedule III controlled substance under 21 U.S.C. § 812 of the Comprehensive Drug Abuse Prevention and Control Act of 1970.

[5] App. Ex. I.

[6] App. Ex. I.

available, to include a full contested trial, to get a fair chance of entering the Fleet Reserve" and would not have agreed to the plea agreement as written.[7]

## II. DISCUSSION

### A. Appellant's Plea Was Not Improvident.

#### *1. Standard of Review/Law*

Appellant states that his pleas were improvident because they were based on a misunderstanding of a material term of the plea agreement. We "review claims as to the providency of a plea under a de novo standard."[8]

> [W]hen collateral consequences of a court-martial conviction—such as administrative discharge, loss of a license or a security clearance, removal from a military program, failure to obtain promotion, deportation, or public derision and humiliation—are relied upon as the basis for contesting the providence of a guilty plea, the appellant is entitled to succeed only when the collateral consequences are major and the appellant's misunderstanding of the consequences (a) results foreseeably and almost inexorably from the language of a pretrial agreement; (b) is induced by the trial judge's comments during the providence inquiry; or (c) is made readily apparent to the judge, who nonetheless fails to correct that misunderstanding.[9]

#### *2. Analysis*

Appellant argues that both the express terms of the plea agreement and the colloquy with the military judge implied a positive endorsement of his Fleet Reserve transfer request by the convening authority. Looking specifically at the paragraph of the plea agreement at issue, as written above, Appellant argues that this term implied the convening authority would positively endorse Appellant's transfer, because the agreement stated "this or another convening authority may recommend [his] transfer at a reduced paygrade." Put somewhat differently, Appellant argues that by agreeing to forward his transfer request, the convening authority implicitly agreed to favorably endorse it. Appellant states he believed the convening authority would endorse his transfer to

---

[7] Decl. of Appellant at 3 (Apr. 3, 2025). The Court granted Appellant's motion to attach his declaration on 8 April 2025.

[8] *United States v. Pena,* 64 M.J. 259, 267 (C.A.A.F. 2007) (citing United *States v. Harris,* 61 M.J. 391, 398 (C.A.A.F. 2005)).

[9] *United States v. Bedania,* 12 M.J. 373, 376 (C.M.A. 1982).

the Fleet Reserve, but perhaps only in a reduced paygrade. During the providence inquiry, when the military judge questioned Appellant as to whether he understood "that the convening authority in this case cannot promise [Appellant] that [he] would be actually transferred to the Fleet Reserves,"[10] Appellant contends that the military judge's focus on the convening authority's inability to make promises that Appellant would be transferred to the Fleet Reserve also induced Appellant to believe the convening authority would positively endorse the request.[11] However, the military judge continued the colloquy and asked if Appellant understood that only the SECNAV or the "Bureau of Personnel" could approve his transfer and could deny his transfer based on the conviction, to which Appellant indicated he understood and still wanted to enter into the agreement.[12] Appellant's argument fails, because it requires an unattainable leap of logic.

Appellant fails to show that he had a misunderstanding of a collateral consequence of pleading guilty as it pertains to his request to transfer to the Fleet Reserve. In his affidavit, Appellant stated his counsel told him he could plead guilty with certain punishments, an administrative discharge, and apply to the Fleet Reserve or plead not guilty and contest the charges, which would be challenging due to the strength of the evidence, and then he may not be able to apply to the Fleet Reserve.[13] He chose to plead guilty. His plea agreement included delaying his court-martial in order for him to reach 20 years of service and protected him from a punitive discharge. These negotiated portions of the plea agreement not only provided Appellant an opportunity to waive his administrative board and request transfer to the Fleet Reserve, but it also included language to confirm he understood the sole authority to approve or disapprove the request to transfer to Fleet Reserve rests with the SECNAV.

Appellant now states he was unaware that the commanding officer would provide an endorsement on his request to waive his administrative board in order to transfer to the Fleet Reserve. Appellant's affidavit states:

> The role of my [commanding officer] from USS RAMAGE was not explained or brought up to me until the negative endorsement was sent to SECNAV while I was in the brig (after I already signed the plea agreement). Up to this point I was not

---

[10] R. at 40.

[11] Appellant's Brief at 11-12.

[12] R. at 40.

[13] Decl. of Appellant at 1-2.

> aware that my command would play a significant role in the approval process for transfer to the Fleet Reserve. I understood that SECNAV would make the decision.[14]

Appellant was correct when he said in his affidavit that he believed the SECNAV would make the decision regarding approval of his Fleet Reserve transfer request.[15] The article for Administrative Action for Fleet Reserve/Retired Reserve Eligible Personnel states "The discretion of SECNAV to approve such transfers is absolute" and "Regardless of any recommendation by a member's chain of command . . . SECNAV may transfer the member in current or reduced pay grade, or deny transfer to the Fleet Reserve as deemed appropriate."[16]

Regardless of Appellant's present understanding about the role of the convening authority in the endorsement of his waiver request in order to transfer to the Fleet Reserve, Appellant stated on the record that he understood his transfer to the Fleet Reserve, based on his conviction, might not be approved. When Appellant was then asked if he still wished to enter into the plea agreement, he said yes.[17] Appellant has failed to show that he had any misunderstanding of a collateral consequence as a result of pleading guilty as he knew there was a possibility that his request to transfer to the Fleet Reserve may be denied. Accordingly, this assignment of error is without merit.

**B. Appellant Was Not Prejudiced Under the *Strickland* test.**

*1. Standard of Review/Law*

We review claims of ineffective assistance of counsel de novo.[18] Under *Strickland*, an appellant bears the burden to demonstrate that "(a) defense counsel's performance was deficient, and (b) this deficient performance was prejudicial."[19] The "defendant can show prejudice by demonstrating a

---

[14] Decl. of Appellant at 2.

[15] Decl. of Appellant at 2.

[16] Dep't of the Navy, *Naval Military Personnel Manual*, art. 1910-166 at 1, 2 (Nov. 11, 2021).

[17] R. at 40-41.

[18] *United States v. Scott*, 81 M.J. 79, 84 (C.A.A.F. 2021) (citing *United States v. Captain*, 75 M.J. 99, 102 (C.A.A.F. 2016)).

[19] *United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' "[20]

The prejudice test of ineffective assistance of counsel in the guilty plea context—whether there is a reasonable probability that, but for counsel's errors, Appellant would have pleaded not guilty—is an objective test which we review de novo.[21]

> Standing alone, an appellant's *post hoc* assertions about how he would have pleaded but for his attorney's deficiencies are not enough to establish prejudice. Courts must also look to contemporaneous evidence to substantiate an appellant's expressed preference. This is so, because the appellant has an incentive to claim, in retrospect, that the result of the plea process would have been different regardless of whether that claim is, in fact, true.[22]

Like the Court of Appeals for the Armed Forces in *United States v. Furth,* we resolve this case by "analyzing and applying the prejudice prong of the *Strickland* test."[23]

*2. Analysis*

Considering the totality of the evidence and the reasons below, we find that Appellant has not met his burden to show that he would not have pleaded guilty notwithstanding his post hoc assertions.

The negotiated plea agreement was beneficial for Appellant and provided him the opportunity to request transfer to the Fleet Reserve. Appellant's negotiated plea agreement included: protection from a punitive discharge; an agreement from the convening authority to refer the charges to a special court-martial; an extension of Appellant's enlistment for six months beyond the expiration of his then-current enlistment so he would continue to receive pay and allowances while in confinement[24] and ensure trial would not occur prior to

---

[20] *Lee v. United States,* 582 U.S. 357, 364-65 (2017) (quoting *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).

[21] *Furth,* 81 M.J. at 117.

[22] *Furth,* 81 M.J. at 117 (citation modified).

[23] *See Furth,* 81 M.J. at 117; *see also United States v. Bradley,* 71 M.J. 13, 16 (C.A.A.F. 2012) ("It is not necessary to decide the issue of deficient performance when it is apparent that the alleged deficiency has not caused prejudice.").

[24] R. at 44. Appellant stated in his affidavit that he incorrectly did not receive pay while in confinement.

Appellant reaching 20 years of service.[25] When weighing the possibility of a contested general court-martial, longer confinement time with no pay, and the strength of the evidence which could have resulted in a punitive discharge before reaching 20 years of service, Appellant chose to create an opportunity to request to transfer to the Fleet Reserve, limit his confinement time, and eliminate the possibility of a punitive discharge. Appellant himself stated that when faced with these options as presented to him by his counsel, including the fact that transfer to the Fleet Reserve was not guaranteed, he chose to plead guilty.[26]

The Government's case against Appellant for conspiracy to distribute a controlled substance and wrongful distribution of a controlled substance was comprehensive.[27] The Government's evidence included recordings of phone calls between Appellant and Ms. H and Ms. S establishing the conspiracy, images of the mail he sent to Ms. H and Ms. S. in jail, and laboratory results of the drug testing of the mail that Appellant sent to the jail for Ms. H and Ms. S to distribute to the other inmates.[28]

While Appellant provided his evaluations and awards, as well as evidence of his allotments to his mother and to his child and one character statement, there was no persuasive evidence in extenuation and mitigation in light of the offenses to which he pleaded guilty. Appellant acknowledged in his unsworn statement to the military judge that he made the choice to commit these crimes and was "ashamed to face the fact that [he is] losing what [he] worked for."[29] Appellant had been in the Navy for more than 18 years at the time that he decided to conspire with his girlfriend and her friend to buy and then mail drugs to a civilian jail in order for them to distribute those drugs to other inmates. He mailed drugs to the jail several times a week between September 2020 and October 2020.[30] At trial, Appellant argued the loss of his retirement pay due to a reduction in pay grade as a mitigating factor, and Appellant asked

---

[25] App. Ex. I at 3. The charges against Appellant were preferred on 29 December 2021, which was seven months before Appellant's completion of 20 years of service. In the plea agreement, Appellant agreed to accept excludable delay in accordance with R.C.M. 707 from 19 January 2022 until the date of the guilty plea hearing 4 August 2022.

[26] Decl. of Appellant at 1-2.

[27] *Lee,* 582 U.S. at 367. ("Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one.").

[28] Pros. Ex. I.

[29] R. at 54.

[30] R. at 25-26.

the military judge to recommend to the convening authority a suspension of any reduction in rank below E-5. However, the military judge did not do so.

"It is not necessary to decide the issue of deficient performance when it is apparent that the alleged deficiency has not caused prejudice."[31] After a review of the totality of the facts and circumstances at the time Appellant entered his guilty pleas, we find there is no "reasonable probability" that Appellant would not have entered into the plea agreement with the convening authority regardless of trial defense counsel's performance.[32] Appellant has not demonstrated prejudice in this case and has not established he received ineffective assistance of counsel.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[33]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[31] *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012). Of course, "not necessary" does not mean the same thing as prohibited, and this Court has the discretion to assess the *Strickland* prongs in either order.

[32] *Furth*, 81 M.J. at 119.

[33] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.